POLLARD V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-179-CR

KEVIN BRYAN POLLARD APPELLANT

A/K/A KEVIN B. POLLARD

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Kevin Bryan Pollard a/k/a Kevin B. Pollard was convicted by a jury of three counts of burglary of a habitation, and he was sentenced to twenty, twenty, and forty-five years’ confinement for each offense respectively, to be served concurrently.  The parties are familiar with the facts of this case, and the controlling law is well-settled.  We will affirm.

In his sole point, Appellant challenges the factual sufficiency of the evidence with respect to his identity as S.L.’s assailant.
(footnote: 2)  Specifically, Appellant argues that S.L.’s “mis-identification of the ethnicity of his robber and his failure to mention any tattoos” on Appellant’s forearms, “when coupled with the total absence of any physical evidence (such as fingerprints, recovered stolen items, or a weapon), renders proof of guilt so obviously weak as to undermine confidence in the jury’s determination.”
(footnote: 3) 

We have carefully examined all of the evidence in the record concerning Appellant’s alleged burglarizing of S.L.’s home in a neutral light, favoring neither party.
(footnote: 4)  On January 9, 2003, fifteen-year-old S.L. came home from school and discovered a burglar inside his parents’ home.  S.L. identified Appellant at trial as the person who was in his house on January 9, 2003.  S.L. testified that, when he saw the burglar, he tried to run away, but the burglar caught him, dragged him by the back of his shirt into a bedroom, “popped [him] in the back of [his] head,” and began banging him into a wall. 

S.L. testified that he fought back but that the burglar kept grabbing him.  At some point, the attacker pulled out a blade and slashed S.L.’s arm and stomach.  S.L. testified that he sat down because he was tired from fighting and that he looked at the burglar.  According to S.L., the burglar “looked at me and said, ‘You say something, motherfucker?  Now watch”; and he turned and ran out the back door.  S.L. stated that the burglar took two rings and two pairs of earrings that belonged to his mother. 

On appeal, Appellant argues that S.L. described his assailant to the police as Hispanic, light complected, green-eyed, and stocky; whereas, Appellant is not Hispanic, had blond hair, is blue-eyed, stands 5’ 7”, and weighs 140 pounds.  S.L. testified that he went to a neighbor’s house across the street and called the police after the attacker left.  When the police arrived, S.L. told the police that his attacker was either a “white or Mexican” male who was wearing blue jeans and a red shirt.  During trial, S.L. acknowledged that Appellant is not Hispanic.  S.L. stated that he initially thought the burglar might be Hispanic because his eyes “were kind of like green” and his own father, who is Hispanic, has green eyes.  S.L. also testified that he thought the burglar might be Hispanic because he had his hair back and stuttered as he spoke. 

S.L. testified that, during the attack, Appellant was wearing Polo boots, but that he was not wearing any shoes.  S.L. agreed on cross-examination that Appellant’s hair color at trial appeared to be “kind of blondish brown.”  On redirect examination of S.L., the State asked, “Is there any doubt in your mind that the man you picked out in court today is the same man that burglarized your house?”  S.L. responded, “That’s the same man.”

Officer R. J. Miller testified that he came to S.L.’s house in response to the 911 call.  Officer Miller spoke with S.L. for about ten to fifteen minutes, and S.L. described the burglar as “a Hispanic male of light complexion, short and stocky,” who was wearing blue jeans and a red shirt.  When cross-examined, Officer Miller testified that he did not ask S.L. to describe the color of the burglar’s eyes.  Officer Miller also stated that S.L. did not tell him whether his assailant had any tattoos. 

Two days after the attack, while riding in the car with his mother, S.L. saw Appellant walking up the street.  When S.L. saw Appellant’s face, he knew that Appellant was the same man who had attacked him.  S.L. testified that “[Appellant] kept on walking and glanced back to see if we were following him.”  S.L. and his mother followed Appellant to a mechanic’s shop, but they did not see him again.  Later that afternoon, S.L. and his father saw Appellant walking down Ayers Street, and they called 911.  S.L. testified that Appellant looked “[s]uspicious” and “kept looking back like if he was worried.” 

Detective Cynthia O’Neil testified that she prepared the arrest warrant for Appellant and typed the “Wanted Person Data Input Sheet.”  It described Appellant “[a]s a white male, five-seven, 140, blue eyes, blond hair, complexion light.”  Detective O’Neil was asked whether that description fits “a short, stocky Hispanic male,” and she responded, “I can’t make a determination as to what a Hispanic male looks like.” 

Corporal Matthew Barron testified that on January 11, he spoke with S.L. and observed Appellant near a Carnival Food Store on Ayers Street. Corporal Barron testified that Appellant “appeared uneasy, . . . appeared to be glancing back looking at the police presence,” and immediately started moving away from the police as they approached.  Officer R. B. Owen testified that he assisted Corporal Barron.  Officer Owen spoke with S.L., who identified Appellant as the person who had burglarized his home.  According to Officer Owen, as he approached Appellant, “he looked back at me, turned around and started moving a lot quicker away from where we were going.”  He added, “I thought he was trying to avoid me.”  The officers took Appellant into custody.

Appellant called his mother, Linda Pollard, to testify.  Linda Pollard testified that Appellant has tattoos on both of his arms, describing them as “large” and covering the “bottom part of his arm[s].”  She testified that Appellant has “[t]he name of his children” on his arms and the name “Kevin” on his hand.  During direct examination, she was asked whether she recalled being with Appellant on January 9, 2003.  She replied, “I am not 100 percent, sure, but yeah.”  Linda Pollard agreed on cross-examination that she did not “want to see [her] son get in major trouble.”  After hearing and considering all of the evidence and testimony presented, the jury found Appellant guilty on all three counts of burglary of a habitation. 

Appellant points out that S.L. never mentioned seeing his tattoos.  On cross-examination, S.L. testified that the burglar was wearing a short sleeve T-shirt and that he was not wearing a jacket.  He testified, however, that he could not see Appellant’s hands and arms because “[he] was just swinging trying to keep [Appellant] away.”  When asked whether he had described his attacker as “short and stocky,” S.L. said that he told the police his attacker was “a little taller than me and stocky.” 

Appellant directs us to 
Ward v. State
, in which the Waco Court of Appeals reversed an aggravated robbery conviction on factual insufficiency grounds as to identity.
(footnote: 5)  However, in 
Ward
, the eyewitness testimony connecting the appellant to the aggravated robbery was outweighed by evidence, including testimony from four witnesses who worked with the appellant, that tended to disprove the appellant’s involvement in the robbery.
(footnote: 6) Here, there is no such evidence.  Rather, S.L. identified Appellant as the burglar and testified as to why he initially thought Appellant
 might be
 Hispanic and why he did not see or mention Appellant’s tattoos.

We are cognizant of the fact finder’s role and unique position, a position that we are unable to occupy.
(footnote: 7)  As the fact finder in this case, the jury judged the credibility of the witnesses and could have “believe[d] all, some, or none of the testimony.”
(footnote: 8)  Further,

[a] factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record.  Such an approach occasionally permits some credibility assessment but usually requires deference to the jury’s conclusion based on matters beyond the scope of the appellate court’s legitimate concern.  Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury’s determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.
(footnote: 9)

In this case, the jury, as the fact finder, determined the weight and credibility to be given to each witness’s testimony and ultimately found that Appellant was the person who burglarized S.L.’s home and attacked him in the process.
(footnote: 10)  Because the available record does not clearly reveal that a different result is appropriate, we must defer to the jury’s determination.
(footnote: 11)
 Upon reviewing the evidence under the applicable standard of review,
(footnote: 12) giving due deference to the fact finder’s determinations, we conclude that the evidence presented at trial is factually sufficient to establish that Appellant burglarized S.L.’s home.

We therefore overrule Appellant’s sole point and affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: August 19, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The standard of review is found in 
Zuniga v. State
, No. 539-02, 2004 WL 840786, at *4, 7, 9 (Tex. Crim. App. Apr. 21, 2004) (clarifying factual sufficiency standard).  
See also Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (same).

3:
See Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003) (stating that a proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal).

4:
See Zuniga
, 2004 WL 840786, at *4; 
Johnson
, 23 S.W.3d at 7.

5:
48 S.W.3d 383, 390-91 (Tex. App.—Waco 2001, pet. ref’d).

6:
Id
. 

7:
See Johnson
, 23 S.W.3d at 9; 
Ward
, 48 S.W.3d at 392 (Gray, J., dissenting).

8:
Chambers v. State
, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

9:
Johnson
, 23 S.W.3d at 8 (citation & footnote omitted).

10:
See id.
 at 7.

11:
See id
. at 8.

12:
See
 
Zuniga
, 2004 WL 840786, at *4, 7, 9;
 Johnson
, 23 S.W.3d at 8-9.