11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Jermaine
Marquette Ellis

Appellant

Vs.                   No. 11-03-00258-CR -- Appeal from Harris County

State
of Texas

Appellee

 

Jermaine Marquette Ellis appeals his conviction by
a jury of the offense of aggravated robbery. 
Finding allegations in an enhancement paragraph to be true, the jury
assessed his punishment at 40 years in the Texas Department of Criminal
Justice, Institutional Division.  Ellis
asserts in two points that the evidence is legally and factually insufficient
to support his conviction.  We affirm. 

In a legal sufficiency review, we view all of the
evidence in the light most favorable to the verdict and then determine whether
a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307 (1979).  In a
factual sufficiency review, we view all the evidence in a neutral light, and we
will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or if the contrary evidence is so strong
that the standard of proof beyond a reasonable doubt could not have been
met.  Zuniga v. State, 144 S.W.3d
477 (Tex.Cr.App.2004).








Nicole Lopez, a 17-year-old high school student,
testified that on January 29, 2003, sometime after 5:00 p.m. while she was
working at a Burger King in Houston, someone put a small silver gun to her head
and told her to give him all the money. 
She indicated that the gunman was tall and was wearing blue jeans and a
black sweatshirt with a hood with a Amesh
type@ over his
face.  She stated that she gave him all
the money from the drive-through register, got on the floor, and curled up in a
ball.  She related that, when he asked
her what she was doing, she asked him what else he wanted her to do.  She testified that he indicated that she had
not opened all the registers yet. According to Lopez, she was not able to open
the main registers because she did not have a key.  She stated that, when he tried to get her to
open the safe, she told him that only the managers had the combination.  She said that she screamed for the manager
but that the manager did not come back. 
Lopez related that, when she could not open the safe, her assailant
started counting backwards from ten and told her that she was about to
die.  She indicated that, when she made
no response, he left.  Lopez testified
that, after viewing a lineup, she was able to identify Ellis immediately based
on his voice when counting down from ten.

Dmaya Parromatte testified that she was the
assistant manager at the Burger King on the occasion in question.  She said that just prior to the robbery she
was on the lookout after receiving a call that a nearby restaurant had been robbed.  She related that, after receiving the call,
she noticed a man walking in wearing a black sweatshirt with a hood on.  She indicated that she thought that that was
unusual because it was not that cold outside. 
She stated that she watched him for 20 to 30 seconds.  She insisted that, initially, his face was
uncovered and that he covered it as he was coming in the door.  She said that he put a scarf over his face.  She testified that the lighting in the
parking lot allowed her to get a good look at him.  Parromatte identified Ellis in court as the
man she was describing.  She said that,
when she attended a lineup, she immediately identified someone as the person
she had seen.  She acknowledged that she
had originally told police that he was Hispanic.  She said that, without seeing Ellis=s hair, he appeared Hispanic because of
his fair skin.  She related that she saw
his face, not his hair.  Parromatte
testified that she described the assailant to the police as being tall, from
six foot to six foot, three inches.

Sergeant Larry Doreck of the Houston Police
Department Robbery Division testified that he was assigned to investigate the
robbery.  He said that he initially
received Ellis=s name
from Aan
associate of another suspect that [he] was looking at at that time involved in
robbery.@  He said that he got a tip from someone after
the robbery about a man who was wearing a hooded sweatshirt and was seen
leaving the Burger King in a dark-colored vehicle with the partial license
plate number, L28 P_N.  Sergeant Doreck
indicated that Ellis was subsequently stopped for a traffic violation while
driving a vehicle with the license plate number L28 PXM.  Sergeant Doreck stated that mistaking Ms and
Ns on license plates is a very common mistake made by citizens when calling in
license plates.








Sergeant Doreck confirmed that both Lopez and
Parromatte immediately identified Ellis in a lineup.  He acknowledged that Parromatte initially
indicated that she thought the assailant was Hispanic.  Sergeant Doreck also acknowledged that the party
making the tip reported that the vehicle the suspect got into was a dark color,
possibly green, whereas the car Ellis was driving was burgundy.  However, he said that, at night, he might
mistake it for green because it was a dark color.

Barbara Ellis, Ellis=s
mother, testified that on January 29, 2003, Ellis called her at about 6:00 and
came to her house about 6:30.  She said
that he stayed there about 35 to 40 minutes. 
She indicated that she had a Wednesday night Bible study starting at
7:30 that she attended.  She related that
Ellis was at her house until a few minutes after 7:00.  On cross-examination, Barbara Ellis testified
that she thought January 29, 2003, was on Sunday, before agreeing that it was a
Wednesday.  She acknowledged telling the
police that Ellis did not come to her house Athat
often.@ She also
acknowledged that she did not know what Ellis did after he left her house.

DeCarla Connor, Ellis=s
girlfriend, acknowledged that she had a burgundy car with the license plate
number L28 PXM.  She testified that on
Wednesday, January 29, 2003, Ellis was with her helping her to take care of
children until about 5:00 p.m. and that she had to be at school at 6:00.  She stated that he dropped her off at
school.  She indicated that she talked to
him at his mother=s house
at 6:45 or 6:50, during a break in her classes. 
She related that Ellis brought her some food at her next break, which
would have been about 7:50.  She stated
that her school was on the southwest side of Houston, whereas the Burger King
was on the north side in the Heights neighborhood.  She estimated that the street where the
Burger King was located was about 30 minutes from her school.  She stated that Ellis left her school at 8:00
or 8:05 at the latest.  She indicated
that he picked her up from school at about 9:30 or 9:40.  She acknowledged that she had never shared
any of this information with the police, saying that she would not have known
how to do so.  She said that the police
never contacted her.  She acknowledged
that she also had not volunteered the information to either police officers or
prosecutors when all were at court earlier during the week of trial.  She insisted that, while she loves Ellis, she
would not come to court and lie for him.

Shamika Ellis, Ellis=s
sister, testified that she had a brief conversation with Ellis on the evening
of January 29, 2003, when he was at their mother=s
house at about 6:45 p.m.  While
acknowledging that she loves her brother and would not want to see anything
happen to him, she insisted that she would not come to court and lie for him.








Sergeant A. R. Guzman of the Houston Police
Department testified that he was assigned to the Burger King robbery
investigation and that he developed Ellis as a suspect.  He said that, when he visited with Ellis=s mother, she did not tell him that she
specifically recalled seeing Ellis the night of the robbery.  He stated that, when he asked her how
frequently she got to visit with Ellis, she told him that he did not come by
very often.  Sergeant Guzman said he left
her information so that, if someone else had any information relative to the
investigation, they could contact him. 
We hold that the evidence is both legally and factually sufficient to
establish Ellis=s
guilt.  We do not accept his contention
that the evidence is insufficient because of any weakness of the eyewitness
identification as opposed to what he characterizes as his mistaken
identification evidence, which we assume to be his family and girlfriend=s testimony as to their visits with him
on the night of the robbery.

We first note that the State=s evidence not only consisted of the
identification evidence but also consisted of evidence that the car of Ellis=s girlfriend, which he drove, had a
license plate sub-stantially matching that of the get-away car.  Ellis does not mention this additional
evidence at all in his analysis.  Second,
the identification evidence is sufficient to support the conviction.  See Aguilar v. State, 468 S.W.2d 75, 77
(Tex.Cr.App.1971).  With respect to the
family=s
testimony, at best, it accounts for Ellis=s
whereabouts from 5:00 p.m. to 6:00 p.m.; from 6:30 p.m. to shortly after 7:00
p.m.; from 7:45 p.m. to 8:05 p.m.; and at 9:30 p.m. or 9:40 p.m.  The testimony does not account for Ellis=s time from 9:40 p.m. on.  Inasmuch as the only information concerning
the robbery is that it occurred during Lopez=s
shift sometime after 5:00 p.m., the family and girlfriend=s testimony was not inconsistent with
Ellis having committed the robbery.  In
his brief, Ellis addresses neither the inconclusiveness of his alibi testimony
nor the inconsistency between his mother=s
account of being with him on the evening in question and her having told the
police only that he did not come around very often.  We overrule points one and two.

The judgment of the trial court is affirmed.

 

PER CURIAM

January 31, 2005

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Wright, J., and

McCall,
J., and Hill, J.[1]











[1]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth sitting by assignment.