11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Patrick Sean McKenzie

Appellant

Vs.                   Nos.
11-03-00413-CR & 11-03-00414-CR -- Appeals from Taylor County

State of Texas

Appellee

 

The jury convicted Patrick Sean McKenzie of two
counts of intoxication manslaughter and assessed punishment at confinement for
eight years in each cause.  The trial
court ordered the sentences to run consecutively.  We affirm. 


In his sole issue in each case, appellant contends
that the evidence is legally and factually insufficient to support the verdict
because the State failed to prove that he was intoxicated at the time of the
accident.  The offense of intoxication
manslaughter, a second degree felony, occurs when a person operates a motor
vehicle in a public place while intoxicated and, by reason of that
intoxication, causes the death of another by accident or mistake.  TEX. PEN. CODE ANN. '
49.08 (Vernon 2003).  With respect to
this case, intoxicated means Anot
having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into the
body.@  TEX. PEN. CODE ANN. '
49.01(2)(A) (Vernon 2003).  








In order to determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307
(1979); Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000).  In order to determine if the evidence is
factually sufficient, we must review all of the evidence in a neutral light and
determine whether the evidence supporting guilt is so weak that the verdict is
clearly wrong and manifestly unjust or whether the evidence contrary to the
verdict is so strong that the beyond-a-reasonable-doubt burden of proof could
not have been met.  Zuniga v. State,
144 S.W.3d 477 (Tex.Cr.App.2004); Ross v. State, 133 S.W.3d 618
(Tex.Cr.App.2004); Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis
v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). 


The record shows that, at approximately 8:05 in
the morning, appellant was driving an 18-wheeler on Interstate 20 and ran into
the back of a travel trailer being pulled by a pickup.  The travel trailer jackknifed, and appellant=s truck broadsided the pickup.  They all proceeded into the median.  The travel trailer came loose from the
pickup, rolled over, and slid across the overpass.  The wreck left several hundred yards of
debris.  The pickup came to a rest upside
down in the center median, where it caught fire with the occupants still
inside.  Both occupants of the pickup,
Annette Stine and Robert Arthur Stine, died during the wreck.  Annette died as a result of the impact,
suffering from cranial/cervical blunt force trauma with a spinal cord injury;
and Robert died as a result of the fire. 

Appellant informed one of the investigating
officers, Officer Kelly Willis, that he did not know what happened because he
had fallen asleep.  Officer Willis
testified that he observed no indications that appellant was impaired
physically or that he was intoxicated. 
Appellant=s speech
was not slurred; and he did not have bloodshot eyes, unsteady balance, or
improper body movements.  Nonetheless,
because the wreck involved fatalities, Officer Willis asked appellant to submit
to a blood sample.  Appellant
consented.  

Appellant was arrested at the scene and booked for
criminally negligent homicide.  Upon
appellant=s arrest,
a piece of aluminum foil containing little crystals was found in appellant=s billfold.  Lab tests showed the crystals to be
methamphetamine weighing .03 grams.  








The lab results from appellant=s blood sample revealed .13 milligrams
of methamphetamine per liter of blood. 
Kathy Jean Erwin, a criminalist with the Texas Department of Public
Safety Crime Lab in Austin, testified regarding her extensive knowledge and
experience in the field of analytical chemistry.  Erwin also testified that she had specialized
knowledge and training on the effects of controlled substances on the human
body.  As for the effects of methamphetamine,
specifically, Erwin stated that she had on-the-job training and that she had Aquite extensively sur-veyed the
literature.@  According to Erwin, the level of
methamphetamine in appellant=s
blood was greater than the level would be for therapeutic purposes.  Erwin testified that there are three phases
involved with the use of methamphetamine. 
During the first phase, the Aup@ phase, the effects on the central
nervous system could manifest themselves in a feeling of euphoria, excitement,
or paranoia.  Another effect of the first
phase would be an inability to divide attention among various tasks and perhaps
impaired judgment.  Erwin referred to the
second phase as the Atweaking@ phase, which lasts from 6 to 18 hours
and involves symptoms such as paranoia, delusion, irritability, anxiety, and
increased fatigue.  The third and final
phase is the Acrash@ or Awithdrawal.@ 
During this phase, the central nervous system becomes depressed and
results in uncontrollable sleepiness and extreme fatigue.  

George Aubrey, a truck driver who was in the truck
with appellant when the wreck occurred, testified that he and appellant left
Fontana, California, headed for Dallas, Texas. 
Before they left California around 5 or 6 in the morning, they smoked
methamphetamine.  Aubrey testified that
he drove for the first 12 to 14 hours, and that appellant took over just before
they reached El Paso.  Aubrey went to the
sleeper to go to sleep.  Aubrey was
awakened between Midland and Odessa when he heard appellant Ahollering@
and asking Aubrey what lane he was in. 
Appellant had fallen asleep and was driving eastbound in the westbound
lanes of Interstate 20.  Aubrey told
appellant to get off the road.  Appellant
pulled into the median and then into a truck stop.  Aubrey thought appellant was going to stay
there and get some sleep.  Aubrey went
back into the sleeper and went to sleep again. 
He was awakened once more by appellant=s
yelling.  This time they were in Abilene,
and appellant was yelling that the truck was on fire.  Aubrey testified that they were on the guard
rail.  Aubrey subsequently looked back
and saw the Stines= pickup
burn and blow up.  








We hold that the evidence is both legally and
factually sufficient to support the jury=s
verdict in this case.  Erwin=s testimony about the depressing
effects of methamphetamine causing uncontrollable sleepiness and fatigue--when
combined with the results of appellant=s
blood test, Aubrey=s
testimony about appellant smoking methamphetamine before they left and falling
asleep while driving between Midland and Odessa, and appellant=s statement that he had fallen
asleep--constitutes sufficient evidence to show that appellant did not have the
Anormal use of [his] mental or physical
faculties by reason of the introduction of...a controlled substance@ into his body.  We find the cases relied upon by appellant[1]
to be distinguishable because those cases contained no expert testimony
regarding the effects of the substances at issue.  In this case, Erwin=s
testimony satisfied that element. 
Appellant=s sole
issue in each case is overruled.  

The judgments of the trial court are
affirmed.  

 

TERRY McCALL

JUSTICE 

 

February 3, 2005 

Do not publish.  See
TEX.R.APP.P. 47.2(b). 

Panel
consists of:  Wright, J., and McCall, J. 

 

Arnot,
C.J., not participating.











[1]Smithhart v. State, 503 S.W.2d 283 (Tex.Cr.App.1973); Kaleta v. State, No.
11-02-00142-CR, 2003 WL 1571583 (Tex.App. - Eastland March 27, 2003, pet=n ref=d)(not designated for publication).