# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00306-CR

**Lesley Wayne Connor, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
NO. B-03-1172-S, HONORABLE BEN WOODWARD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Lesley Connor guilty of assault on a family or household member and making a terroristic threat. *See* Tex. Pen. Code Ann. §§ 22.01, .07 (West Supp. 2004-05). Connor does not dispute that he both assaulted a woman and made threats. Rather, in two issues, Connor asserts that there was legally and factually insufficient evidence that he was a member of the victim's household. We will affirm the conviction.

## BACKGROUND

According to trial testimony, at the time of the offense, Jennifer Alejandro lived in a house with her two children; her aunt, Katherine Rodriguez; and Rodriguez's two children. Ms. Alejandro met Connor in August 2003. They began dating a week later, and Connor moved into her

house around September 4th. Connor and Alejandro shared a bed in the same room where Alejandro's children also stayed. After moving in, Connor helped Alejandro pay an electric bill and paid to have the family's telephone services connected.

On September 21, approximately three weeks after Connor had moved in, Alejandro and Connor began arguing while lying in bed. Connor threatened to stab Alejandro with a knife that was lying beside him. Alejandro testified that she was afraid to move. After Connor left to go to the store, Alejandro made arrangements to remove her children from the home and called the police. She reported that Connor had made death threats against her. Officers Matthew Baldwin and Steve Dophied of the San Angelo Police Department responded. Baldwin went to Alejandro's house while Dophied searched for Connor, whom he located on his way back from the store. Because the report involved a death threat, Dophied searched Connor for weapons and located Connor's pocket knife, which Connor voluntarily gave Dophied. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). According to Officer Dophied, Connor appeared surprised that Alejandro had reported a problem.

Connor rode with Dophied back to the house. Upon their arrival, Baldwin told Dophied that Alejandro wanted Connor to leave. Connor told Dophied he would gather his things and leave voluntarily. However, as Connor gathered his belongings, he began arguing again with Alejandro. After Connor threatened Alejandro in Baldwin's presence, and it otherwise "became obvious that [Connor] was not going to leave the house unless made to do so," Baldwin decided to arrest Connor. As Baldwin grabbed Connor's left arm to handcuff him, Connor, in the presence of both police officers, punched Alejandro in the face with his right fist. Connor continued lashing out at Alejandro as the officers attempted to handcuff him, kicking Alejandro and grabbing at her hair.

2

Eventually, the two officers succeeded in handcuffing Connor. As they were escorting Connor to the patrol car, Connor threatened to burn Alejandro's house down and kill Alejandro "if it takes the rest of my [expletive] life."

Connor was indicted for assault of a household member and retaliation. A jury found him guilty of assault of a household member and of making a terroristic threat. After enhancements, the court assessed punishment at eighty-five years' confinement for the assault charge and one hundred-eighty days' confinement in county jail for the terroristic threat. This appeal followed.

## DISCUSSION

Connor does not dispute that he assaulted and threatened Ms. Alejandro but, in two issues, challenges the sufficiency of the evidence that he was a member of Alejandro's household under the meaning of penal code section 22.001. *See* Tex. Pen. Code Ann. § 22.001.

**Standard of review**

In evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Russeau v. State*, No. AP-74,466, 2005 Tex. Crim. App. LEXIS 976, at *7 (Tex. Crim. App. June 29, 2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a factual sufficiency review, we view all of the evidence in a neutral light and will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and unjust, or the contrary evidence is so strong that the "beyond a reasonable doubt" standard of proof

could not have been met. *Russeau*, 2005 Tex. Crim. App. LEXIS 976, at *8-9; *see Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004).

**Household member**

Connor concedes that an assault occurred, but asserts that there is legally and factually insufficient evidence that Connor was a household member because he had only been living with Alejandro as an overnight guest for three weeks. *See* Tex. Fam. Code Ann. § 71.005 (West 2002). Connor also attributes significance to the fact that the State initially charged him only with criminal trespass and that, a few weeks after his judgment of conviction for assault of a household member, he apparently pled no contest to the still-pending trespass charge and was convicted. *See* Tex. Pen. Code Ann. § 30.05 (West Supp. 2004-05) (element of criminal trespass is lack of consent to enter premises).[1] Connor was ultimately charged with intentionally, knowingly, or recklessly causing bodily injury to a member of his family or household, a third-degree felony. *See id*. § 22.01. There was evidence at trial that Connor had previously been convicted of an offense against a member of his family or household under section 22.01. *See id*.

Although the District Attorney suggests that "certainly, there are grounds to appeal his criminal trespass conviction," we agree that this subsequent conviction has no bearing on our analysis of the evidence supporting his prior conviction for assault of a household member,

---

[1] Although the criminal trespass judgment of conviction is not in the record, Connor attached it as an appendix to his brief, and the District Attorney acknowledges that, less than a month after Connor was sentenced in this case, Connor pleaded no contest to the trespass charge. Evidently the Tom Green County Attorney, as distinguished from the District Attorney, prosecuted the criminal trespass charge.

4

especially where the facts underlying the trespass conviction are not in the record before us.² Under section 22.001, "household" is defined as a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other. *Id.* § 22.001(e)(2) (incorporating definition of "household" from the family code); Tex. Fam. Code Ann. § 71.005. "Member of a household" includes a person who previously lived in a household. Tex. Fam. Code Ann. § 71.006 (West 2002). Connor argues that the evidence is insufficient to support a finding that he was a member of Alejandro's household because there was no "evidence of the terms of the living together agreement between the parties," no evidence that Connor paid rent, and no evidence that Connor had a key or a right to include or exclude persons from the residence. Connor also points to Baldwin's testimony that he had originally planned to arrest Connor for criminal trespass because he did not believe Connor lived with Alejandro. Baldwin explained that Alejandro had told him that Connor had been staying with juveniles who were repeatedly in legal trouble, and because she was concerned about him, she offered to let him stay at her house. Baldwin explained that he told Connor he was under arrest for criminal trespass because, at the time, Baldwin did not have any information that would support any type of claim to the house by Connor. Dophied added that, at the time of the arrest, he had no opinion whether Connor was a member of Alejandro's household.

A police videotape of the incident was also introduced into evidence. In it, Baldwin stated "so he's–he's staying here, then, he's not living here." Alejandro responded "No, he is not living here." However, Connor then asked if he could stay one more night, until he could get his

---

² However, we express no opinion regarding any issues Connor might raise against his criminal trespass conviction, as it is not before us.

stuff back. Baldwin told him that, in light of all of his threats, he would not be allowed to stay. Connor told Baldwin, "I got a lot. I'm getting all my stuff." There was also evidence that Connor owned a VCR, stereo, pair of underwear, and socks at the home.

Moreover, Alejandro testified that she and Connor had been sharing a bed for approximately three weeks before the assault, and that they had had a sexual relationship. Alejandro's aunt, Rodriguez, further testified that Connor had been living in the house two to three weeks and that he had paid to have their telephone services connected. There was no evidence that Connor had stayed at any other location during this period, or that he had resided elsewhere within the house other than with Alejandro and her children. *See id*. § 71.005. Finally, while the police were helping Connor vacate the premises, Connor stated "let me get my thoughts together . . . *get me a place to stay. I ain't got no place to stay, man*." (Emphasis added).

The legislature has provided that one is not a member of a household unless there is proof that the persons are "living together in the same dwelling." *Id*. In *Coleman v. State*, the evidence was insufficient that the defendant was a member of the household where none of the witnesses testified that the victim had lived with the defendant at the time he was killed or that the victim had ever lived in the same residence with the defendant. No. 05-01-01662-CR, 2003 Tex. App. LEXIS 2105, at *6-8 (Tex. App.–Dallas 2003, pet. ref'd) (not designated for publication). By contrast, in *Goodwin v. State*, the Fort Worth Court of Appeals found that testimony that the defendant and the victim had been living together at the time of an assault was legally sufficient evidence that the assault was against a family member. 91 S.W.3d 912, 920 (Tex. App.–Fort Worth 2002, no pet.). Similarly to *Goodwin*, there is evidence here that Connor had been living with

6

Alejandro for approximately three weeks at the time of his assault, that they had had a sexual relationship, that he had paid to have the phone connected, and that he admitted that he had no other place to stay. Relying on this evidence, a rational juror could have found that Connor was a member of Alejandro's household beyond a reasonable doubt. *Russeau*, 2005 Tex. Crim. App. LEXIS 976, at \*7. We overrule Connor's first issue.

The same evidence supports our conclusion that the evidence was not so weak that the verdict was clearly wrong and unjust. Moreover, evidence contrary to the verdict was not so strong that the "beyond a reasonable doubt" standard of proof could not have been met. *Id*.; *see Zuniga*, 144 S.W.3d at 484-85. We overrule Connor's second issue.

## CONCLUSION

Having overruled the issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:  August 11, 2005

Do Not Publish

7