COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-404-CR

 

 

THURMAN LEE HENDERSON                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 297TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction

Appellant Thurman Lee
Henderson appeals his sixty-one-year sentence for burglary of a
habitation.  In two points, appellant
argues that the evidence is legally and factually insufficient to show that he
entered the apartment without the effective consent of the owner.  We affirm.

 








II. Background Facts

On July 15, 2003, Rose Tryon
was sleeping on the couch when she heard a hard knock on the front door of the
apartment.  Although she could not see
who was at the door, she felt like it was appellant because he had been
harassing her.  While he was knocking at
the door, appellant said, AI know you are in there.@[2]  Rose then went into the
kitchen to get the telephone to call 911 and took the telephone into the
bathroom because she did not want appellant to hear her making the call.  After she had contacted the 911 dispatcher,
Rose went out and saw that the door was shaking because appellant was hitting
it, so she stood against the back of the door.








Although the door had two
locks, one being a deadbolt, appellant finally got the door to break open.  After getting the door open, appellant was
not able to get inside the apartment because Rose was still holding the door,
so he picked up a piece of the door frame that had broken off and began hitting
Rose with it from the outside of the apartment through the space between the
door and the frame.  Appellant then
picked up a mop that was on the outside of the apartment and began swinging it
inside the cracked door and hit Rose with it. When appellant finally got inside
the apartment, Rose saw a butcher knife on a table.  When she picked it up, appellant ran out of
the apartment.  Rose chased appellant
downstairs, and he initially ran away. 
But when Rose was knocking on a neighbor=s door, she turned around and saw appellant coming back towards her
with what appeared to be a barbeque rack in one hand and another object in the
other hand.  When some neighbors came
outside, appellant ran off again.  Rose
had injuries that included a knot on her forehead, a black eye, and injuries on
her arm and wrist that she received when she was trying to block appellant from
hitting her. 

On August 17, 2004, the jury
found appellant guilty of burglary of a habitation.  On August 18, the jury sentenced appellant to
sixty-one years in the Institutional Division of the Texas Department of
Criminal Justice after finding him guilty of the offense and answering true to
the repeat offender notice.

III. Legal and Factual
Sufficiency

In two points, appellant
complains that the evidence was legally and factually insufficient to show that
he entered the apartment without the effective consent of the owner.  Specifically, appellant argues that he had
the effective consent of Teresa Walker, the lessee of the apartment, to be in
the apartment and that Rose did not have a greater right of possession than he
did. 

 








 

A.  Standards of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 
 In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Law

Penal code section 30.02
defines the offense of burglary.  The
pertinent part of section 30.02 states,

(a) A
person commits an offense, if, without the effective consent of the owner, the
person: 

 








(1)
enters a habitation, or a building (or any portion of a building) not then open
to the public, with intent to commit a felony, theft, or an assault; or

. . . . 

 

(3)
enters a building or habitation and commits or attempts to commit a felony,
theft, or an assault.  

 

Tex. Penal Code Ann. '
30.02(a)(1), (3) (Vernon 2003).  Section
1.07 of the penal code defines Aowner@ as a person
who has title to the property, possession of the property, whether lawful or
not, or a greater right to possession of the property than the actor.  Id. ' 1.07(a)(35)(A) (Vernon Supp. 2005). 


C.  Analysis








At the trial, Fort Worth
Police Officer Michael Thomas Brown testified that he was dispatched on July
15, 2003 to the Joshua Cove Apartments for a domestic disturbance in which the
complainant, Rose, reported that her ex-boyfriend was kicking the door.  He stated that he was the first officer to
arrive at apartment 261 and got there at 4:47 p.m.  When he arrived, Rose was very upset and
crying, but appellant was no longer at the apartment.  Officer Brown stated that he talked with Rose
approximately ten to twenty minutes after the incident occurred and that she
told him that her ex-boyfriend had kicked in the door and assaulted her with a
mop handle.  While he was talking with
Rose, Officer Brown noticed that she had a knot on the upper left side of her
forehead and was holding her arm, complaining that she had pain in her wrist.

After talking with Rose and
getting a description of appellant=s clothing and the direction he was traveling, Officer Brown left the
apartment and found appellant approximately two to three minutes later in a
Church=s Chicken parking lot. 
Appellant matched the description that Rose had given Officer Brown at
the apartment.  When Officer Brown
approached appellant, he noticed that appellant was out of breath, sweaty, and
had paint chips in his hair.  After
appellant gave Officer Brown a fraudulent name, Officer Brown took appellant
back to the apartment, and Rose identified him as the man who broke into the
apartment.








Rose testified that she lived
in the apartment for six to seven months with her brother, Ezelle Birmingham,
and his common law wife, Teresa Walker, who is appellant=s sister.  She stated that she
had dated appellant from March 2001 to June 2001 and that they had not had a
good relationship since their breakup. 
Rose testified that she went to Abilene for a while after the breakup
but returned to Fort Worth in February 2002. 
Rose stated that appellant never came over to the apartment when she was
there and that he did not live there. 
She told Officer Brown when he arrived that she lived in the
apartment.  Rose stated that she
continued to live in the apartment after the assault occurred until Teresa
moved into another apartment complex.

Teresa testified that neither
Rose nor appellant lived in the apartment with her.  She stated that Rose did stay overnight about
one to two times a month and that Rose would come over whenever Teresa needed a
babysitter.  Teresa stated that appellant
would come over to the apartment more than Rose, which would be about three
times a week. 

Teresa testified that
appellant was mad because Rose broke up with him and that he wanted to get back
together with her.  She said that in
2002, while she was at Ruby Haines=s (Rose=s mother)
house with Rose, appellant came over to the house and knocked on the door for
approximately five to six minutes asking to talk to Rose.  She stated that Ruby was so scared that she
went and got her pistol and that appellant=s mother had to be called to come and get him.

Teresa testified that she
left the apartment with her children on July 15, 2003 and allowed Rose to stay
and lie on the couch and watch TV.  She
stated that Rose had permission to be in the apartment and that no one had
permission to break into the apartment. 
At the time of trial, Teresa still had some of Rose=s granddaughter=s clothes in
her possession.  








Ruby Haines, and Rose=s brother, James Tryon, testified that they would visit Rose at the
apartment when she lived there with Teresa. 
Ruby stated that she would pick up Rose at the apartment and take her to
church and to the grocery store.  James
testified that he would go to the apartment about once a week, and Ruby stated
that she went to the apartment quite a bit.  


Appellant argues that there
are three reasons why the evidence is legally and factually insufficient to
show that he entered the apartment without the effective consent of the
owner.  He contends that he had Teresa=s consent to be at the apartment, that he qualified as an owner by
virtue of his right of access to the apartment, and that Rose did not have a
greater right to possession than he did to the apartment.








We will initially address
appellant=s first two
contentions.  Although Teresa stated that
appellant was welcome to come over to her apartment anytime, she testified that
no one had permission to break into the apartment. The evidence shows that
appellant entered the apartment by breaking down the door.  From Teresa=s own testimony, breaking down the door was not part of the consent
that she had given appellant.  Further,
there was no evidence that anyone but Teresa and Ezelle were the true tenants
of the apartment.  Teresa and Rose both
testified that appellant did not live there. 
Additionally, appellant did not qualify as an owner.  As stated above, an owner is a person who has
title to the property, possession of the property, or a greater right to
possession of the property.  Tex. Penal Code Ann. ' 1.07(a)(35)(A).  On July 15,
appellant did not have title to the apartment or  possession of the apartment, nor did he have
a greater right to possession than Rose, as we discuss below.  

In his third argument,
appellant addresses the issue of whether he had a greater right to possession
of the apartment than Rose.  He asserts
that the evidence is legally and factually insufficient because Rose did not
have a greater right to possession of the apartment than he did.  Rose testified that she lived at the
apartment for approximately six months and that she was living there when
appellant broke into the apartment.  Ruby
and James also testified that Rose lived at the apartment.  In fact, the only person to testify that Rose
did not live at the apartment was appellant=s sister Teresa.  However,
Teresa also stated that she did not want to see appellant get into trouble.

We believe that the evidence
is legally and factually sufficient to prove that Rose was living at the
apartment when the burglary occurred. 
Not only did three out of the four witnesses testify that Rose lived
there at the time of the burglary, Rose also told Officer Brown when he arrived
at the apartment that she lived there, and Teresa still had clothes that
belonged to Rose and her granddaughter in her possession.








Alternatively, even if the evidence
was not sufficient to show that Rose was living at the apartment, we believe
that the evidence proves that Rose had a greater right to possession of the
apartment on July 15, 2003, than appellant. 
Teresa testified that Rose had her permission to be in the apartment to
lie down and watch TV that day.  Although
appellant had Teresa=s consent to
come over to the apartment anytime, on July 15, Rose had Teresa=s specific permission to be at the apartment.  Because we hold that the evidence shows that
Rose had a greater right of possession on the date of the offense, appellant=s final argument is not persuasive. 


We hold that the evidence, when
viewed in the light most favorable to the verdict, supports a determination
beyond a reasonable doubt that Rose had a greater right to possession of the
apartment than appellant; therefore, we overrule appellant=s first point.  Additionally,
when viewed neutrally, the evidence is not so obviously weak or so greatly
outweighed by contrary proof that it would not support the finding of guilt
beyond a reasonable doubt.  We overrule
appellant=s second
point.

 

 

 

 








IV. Conclusion

Having overruled appellant=s two points, we affirm the trial court=s judgment.

PER
CURIAM

 

PANEL F:    LIVINGSTON,
HOLMAN, and GARDNER, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: November
23, 2005











[1]See Tex. R. App. P. 47.4.





[2]Appellant
yelled AI
know you are in there@
twice and prefaced his statements with expletives.