BURNS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-601-CR

TRAMAINE D. BURNS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Tramaine D. Burns appeals his conviction and forty-eight-year sentence for aggravated assault with a deadly weapon.  In two points, appellant argues that the evidence is legally and factually insufficient to establish that he intentionally or knowingly shot Sherrie Pounders.  We affirm.

II. Background Facts

On January 17, 2003, appellant went to Beverly Barefield’s (his aunt’s) apartment.  When he arrived, Pounders, Beverly, Sharonica Barefield, Dominique Peavy, Bryann Williams, and P.M., a fourteen-year-old girl, were all at the apartment.  Pounders testified that appellant had a gun and a bottle of gin in his hands when he arrived.

During the night, appellant got into an argument with Dominique.  As Dominique was going upstairs to get her stuff to leave the apartment, appellant attempted to pull her back down the stairs by her hair.  However, Pounders got in between appellant and Dominique and told appellant, “Just let her go.  Just let her go and get her stuff and leave.”  Appellant finally let Dominique go upstairs.  When appellant was walking down the stairs, he turned to Pounders and said, “Don’t never go against your family for no whore or nothin.” Appellant went and sat at the table and Pounders went and sat on the couch. 

Pounders testified that appellant then got up from the table and walked over to her and got in her face.  Pounders pushed him off and told him to get out of her face.  After appellant did it again, Pounders pushed him off again, and appellant went back over to the table and sat down.

However, Pounders stated that appellant then got up a second time from the table.  He went over to the couch and sat down next to P.M. and attempted to put his hands in between her legs.  P.M. got up and walked away, but later returned. 

After P.M. returned to the living room, Pounders got up to stretch and heard appellant say, “---- it.”  Pounders then heard a gunshot and fell to the floor.  Pounders began to feel her body to see if she was shot and felt blood coming from her back.  Appellant then walked over to Pounders and said, “I shot you, huh?”  Appellant then left the apartment.  

EMS took Pounders to the hospital.  She sustained a gunshot injury from a bullet that entered her stomach and exited her back.  At trial, Pounders testified that she was still experiencing a lot of pain. 

The jury found appellant guilty of aggravated assault with a deadly weapon.  After appellant pled true to the repeat offender notice, the trial court assessed his punishment at forty-eight years in the Institutional Division of the Texas Department of Criminal Justice.

III.  Legal and Factual Sufficiency

In two points, appellant contends that the evidence is legally and factually insufficient to show that he intentionally or knowingly shot Pounders.

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B. Analysis

At trial, Pounders testified that when appellant got to Beverly’s apartment, he appeared to be drunk and had a gun and a bottle of gin in his hands.  During the night, appellant got in an argument with Dominique and Pounders intervened.  Appellant also attempted to molest P.M. at the apartment.  After both altercations, appellant went and sat at the table, and Pounders sat on the couch.  

Pounders testified that after sitting on the couch for a while, she got up to stretch and while looking to her left to talk to P.M., she heard appellant say, “---- it.”  Pounders stated that the next thing she heard was the gun going off and she fell to the floor in front of the couch.  Appellant then walked over to Pounders and said, “Well, y’all shouldn’t’ve [sic] made me mad,” and, “I shot you, huh.  That’s messed up.”  Appellant told Pounders that everyone pissed him off and they should not do that.  Pounders testified that she saw appellant walk upstairs, but that she did not see him leave the apartment. 

Ronnie Sabo, a Fort Worth police officer, testified that he received a call around 10:00 p.m. that a shooting had occurred at the French Quarter Apartments.  When he arrived at Beverly’s apartment, he saw Pounders lying on the floor with a gunshot wound to her stomach.  Officer Sabo stated that Beverly, Sharonica, P.M., Bryann, and Dominique were in the apartment when he arrived.  Officer Sabo asked Pounders about the shooting, and Pounders told him that she was standing in the living room and that she was shot through the sliding glass door.  However, after examining the sliding glass door, Officer Sabo noticed that the door was intact and that there were no bullet holes in it. Officer Sabo testified that he believed the shot came from inside the apartment, not from the outside as Pounders had told him.  He did not have an opportunity to ask Pounders who shot her.

Additionally, Officer Sabo interviewed Beverly, Sharonica, Bryann, and Dominique at the apartment.  Officer Sabo stated that Sharonica, Bryann, and Dominque stated that they were upstairs when they heard the gunshot.  He said that although he tried to talk with Beverly, she appeared to be intoxicated and did not make “much sense.”

Pamela Grundy, who lived upstairs from Beverly, testified that on January 17, 2003, at approximately 10:00 p.m. she was in her bedroom when she heard a knock on her front door.  Grundy said that when she went into the living room, one of her daughters had answered the door and P.M. and Bryann were inside the apartment and appeared to be upset. She further testified that she went to the front door and saw appellant knocking on her neighbor’s, Helen Smith’s, front door.
(footnote: 2) After Smith did not answer the door, appellant walked away. Grundy further testified that after appellant had left, Smith came over to her apartment and appeared scared.

Jose Duran, a Fort Worth police officer, testified that when he arrived at the apartment, he saw Pounders on the floor holding her stomach talking with Officer Sabo.  Officer Duran stated that there was a bullet hole in a vertical blind of the sliding glass door, a bullet hole in the wall next to the sliding glass door, and a bullet fragment on the inside sliding door rail.  He further stated that it appeared that the bullet came from inside the apartment.

David Ukle, another Fort Worth police officer, stated that he retrieved one fired casing, one projectile, and a box of ammunition
(footnote: 3) from the apartment. However, Officer Ukle said that he did not find the gun.  After looking at all the evidence, Officer Ukle stated that the evidence showed that the gunshot came from inside the apartment.  He further testified that there were beer cans and glasses in the apartment and opined that there was drinking going on that night. 

Additionally, Jeffrey Dunn, a detective with the Fort Worth Police Department, testified that he attempted to interview Pounders at the hospital, but she was heavily medicated and was “slipp[ing] in and out of consciousness.”  Although he attempted to meet with Pounders on several other occasions, he was unable to locate her.  On March 3, 2003, Pounders went to Detective Dunn’s office and gave him a written statement
(footnote: 4) of the events that occurred the night of January 17. 

Appellant contends that the evidence is legally and factually insufficient to prove that he intentionally or knowingly shot Pounders.  Appellant contends that the evidence is just as consistent with an accidental shooting as an intentional one and that there is no evidence that he pointed the gun at Pounders or that he shot her.  However, Pounders testified that appellant shot her.  Additionally, Pounders stated that appellant arrived at the apartment with a gun and a bottle of gin.  After Pounders was shot, appellant walked over to her and said, “I shot you, huh.  That’s messed up,” and “Well, y’all shouldn’t’ve made me mad.”

While proof of the 
corpus delicti 
of an offense may not be made by an extrajudicial confession alone, proof of the 
corpus delicti 
need not be made independent of the extrajudicial confession.
(footnote: 5)  
Layland v. State
, 144 S.W.3d 647, 651 (Tex. App.སྭBeaumont 2004, no pet.).  The court of criminal appeals has held that an extrajudicial confession of an accused is sufficient to support the conviction as long as it is corroborated.  
See Gribble v. State
, 808 S.W.2d 65, 70 (Tex. Crim. App. 1990), 
cert. denied
, 501 U.S. 1232 (1991).  Thus, the extrajudicial confession of a defendant must be corroborated by other evidence tending to show that a crime was committed.  
Id.
  Here, there was other evidence presented at trial to show that appellant shot Pounders. Officers Sabo, Duran, and Ukle testified that the gunshots had to have come from inside the apartment.  Additionally, Pounders herself testified that appellant had a gun when he entered the apartment.   

Further, appellant fled the scene after the shooting.  Appellant’s consciousness of guilt is shown by his flight from the scene.  
Martin v. State
, 151 S.W.3d 236, 245 n.8 (Tex. App.སྭTexarkana 2004, pet. ref’d); 
see also Cawley v. State
, 166 Tex. Crim. 37, 310 S.W.2d 340, 342 (1957) (“When unexplained, flight has long been deemed indicative of a consciousness of guilt.  'The wicked flee when no man pursueth.’  Proverbs 28:1.”), 
cert. denied
, 361 U.S. 920 (1959).  Additionally, the court of criminal appeals has held that escape, flight, and attempt to escape are always admissible as a circumstance from which an inference of guilt may be drawn. 
Thomas v. State
, 530 S.W.2d 834, 836 (Tex. Crim. App. 1975). Because appellant fled the scene after the shooting, the jury could reasonably construe this as consciousness of guilt.    

We hold that the evidence, when viewed in the light most favorable to the verdict, supports a determination beyond a reasonable doubt that appellant intentionally or knowingly shot Pounders; therefore, we overrule appellant’s first point.  Additionally, when viewed neutrally, the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilty beyond a reasonable doubt.  We overrule appellant’s second point.  

IV. Conclusion

Having overruled appellant’s two points, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: February 23, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Smith lived across from Grundy. [4 RR 80]

3:
The box of ammunition was found above the stove in the kitchen. Additionally, the box of ammunition was the same kind, .9 millimeter, as the casing that was found in the living room.

4:
The written statement was not introduced at trial.  However, Pounders stated that in the statement she said that appellant was the person who shot her. 

5:
The 
corpus delicti 
doctrine requires that evidence independent of a defendant's extrajudicial confession show that the “essential nature” of the charged crime was committed by someone.  
Bible v. State
, 162 S.W.3d 234, 246 (Tex. Crim. App. 2005).