COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-601-CR

 

 

TRAMAINE D. BURNS                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

 

Appellant Tramaine D. Burns
appeals his conviction and forty-eight-year sentence for aggravated assault
with a deadly weapon.  In two points,
appellant argues that the evidence is legally and factually insufficient to
establish that he intentionally or knowingly shot Sherrie Pounders.  We affirm.








II. Background Facts

On January 17, 2003,
appellant went to Beverly Barefield=s (his aunt=s)
apartment.  When he arrived, Pounders,
Beverly, Sharonica Barefield, Dominique Peavy, Bryann Williams, and P.M., a
fourteen-year-old girl, were all at the apartment.  Pounders testified that appellant had a gun
and a bottle of gin in his hands when he arrived.

During the night, appellant
got into an argument with Dominique.  As
Dominique was going upstairs to get her stuff to leave the apartment, appellant
attempted to pull her back down the stairs by her hair.  However, Pounders got in between appellant
and Dominique and told appellant, AJust let her go.  Just let her
go and get her stuff and leave.@  Appellant finally let
Dominique go upstairs.  When appellant
was walking down the stairs, he turned to Pounders and said, ADon=t never go
against your family for no whore or nothin.@ Appellant went and sat at the table and Pounders went and sat on the
couch. 

Pounders testified that
appellant then got up from the table and walked over to her and got in her
face.  Pounders pushed him off and told
him to get out of her face.  After appellant
did it again, Pounders pushed him off again, and appellant went back over to
the table and sat down.








However, Pounders stated that
appellant then got up a second time from the table.  He went over to the couch and sat down next
to P.M. and attempted to put his hands in between her legs.  P.M. got up and walked away, but later
returned. 

After P.M. returned to the
living room, Pounders got up to stretch and heard appellant say, A---- it.@  Pounders then heard a gunshot and fell to the
floor.  Pounders began to feel her body
to see if she was shot and felt blood coming from her back.  Appellant then walked over to Pounders and said,
AI shot you, huh?@  Appellant then left the apartment.  

EMS took Pounders to the
hospital.  She sustained a gunshot injury
from a bullet that entered her stomach and exited her back.  At trial, Pounders testified that she was
still experiencing a lot of pain. 

The jury found appellant
guilty of aggravated assault with a deadly weapon.  After appellant pled true to the repeat
offender notice, the trial court assessed his punishment at forty-eight years
in the Institutional Division of the Texas Department of Criminal Justice.

III.  Legal and Factual Sufficiency

In two points, appellant
contends that the evidence is legally and factually insufficient to show that
he intentionally or knowingly shot Pounders.

A.  Standards of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 








In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

B. Analysis

At trial, Pounders testified
that when appellant got to Beverly=s apartment, he appeared to be drunk and had a gun and a bottle of gin
in his hands.  During the night,
appellant got in an argument with Dominique and Pounders intervened.  Appellant also attempted to molest P.M. at
the apartment.  After both altercations,
appellant went and sat at the table, and Pounders sat on the couch.  








Pounders testified that after
sitting on the couch for a while, she got up to stretch and while looking to
her left to talk to P.M., she heard appellant say, A---- it.@  Pounders stated that the next thing she heard
was the gun going off and she fell to the floor in front of the couch.  Appellant then walked over to Pounders and
said, AWell, y=all shouldn=t=ve [sic]
made me mad,@ and, AI shot you, huh.  That=s messed up.@  Appellant told Pounders that everyone pissed
him off and they should not do that. 
Pounders testified that she saw appellant walk upstairs, but that she
did not see him leave the apartment. 

Ronnie Sabo, a Fort Worth
police officer, testified that he received a call around 10:00 p.m. that a
shooting had occurred at the French Quarter Apartments.  When he arrived at Beverly=s apartment, he saw Pounders lying on the floor with a gunshot wound
to her stomach.  Officer Sabo stated that
Beverly, Sharonica, P.M., Bryann, and Dominique were in the apartment when he
arrived.  Officer Sabo asked Pounders
about the shooting, and Pounders told him that she was standing in the living
room and that she was shot through the sliding glass door.  However, after examining the sliding glass
door, Officer Sabo noticed that the door was intact and that there were no
bullet holes in it. Officer Sabo testified that he believed the shot came from
inside the apartment, not from the outside as Pounders had told him.  He did not have an opportunity to ask
Pounders who shot her.








Additionally, Officer Sabo
interviewed Beverly, Sharonica, Bryann, and Dominique at the apartment.  Officer Sabo stated that Sharonica, Bryann,
and Dominque stated that they were upstairs when they heard the gunshot.  He said that although he tried to talk with
Beverly, she appeared to be intoxicated and did not make Amuch sense.@

Pamela Grundy, who lived
upstairs from Beverly, testified that on January 17, 2003, at approximately
10:00 p.m. she was in her bedroom when she heard a knock on her front
door.  Grundy said that when she went
into the living room, one of her daughters had answered the door and P.M. and
Bryann were inside the apartment and appeared to be upset. She further testified
that she went to the front door and saw appellant knocking on her neighbor=s, Helen Smith=s, front
door.[2]
After Smith did not answer the door, appellant walked away. Grundy further
testified that after appellant had left, Smith came over to her apartment and
appeared scared.

Jose Duran, a Fort Worth
police officer, testified that when he arrived at the apartment, he saw
Pounders on the floor holding her stomach talking with Officer Sabo.  Officer Duran stated that there was a bullet
hole in a vertical blind of the sliding glass door, a bullet hole in the wall
next to the sliding glass door, and a bullet fragment on the inside sliding door
rail.  He further stated that it appeared
that the bullet came from inside the apartment.








David Ukle, another Fort
Worth police officer, stated that he retrieved one fired casing, one
projectile, and a box of ammunition[3]
from the apartment. However, Officer Ukle said that he did not find the
gun.  After looking at all the evidence,
Officer Ukle stated that the evidence showed that the gunshot came from inside
the apartment.  He further testified that
there were beer cans and glasses in the apartment and opined that there was
drinking going on that night. 

Additionally, Jeffrey Dunn, a
detective with the Fort Worth Police Department, testified that he attempted to
interview Pounders at the hospital, but she was heavily medicated and was Aslipp[ing] in and out of consciousness.@  Although he attempted to meet
with Pounders on several other occasions, he was unable to locate her.  On March 3, 2003, Pounders went to Detective
Dunn=s office and gave him a written statement[4]
of the events that occurred the night of January 17. 








Appellant contends that the
evidence is legally and factually insufficient to prove that he intentionally
or knowingly shot Pounders.  Appellant
contends that the evidence is just as consistent with an accidental shooting as
an intentional one and that there is no evidence that he pointed the gun at
Pounders or that he shot her.  However,
Pounders testified that appellant shot her. 
Additionally, Pounders stated that appellant arrived at the apartment
with a gun and a bottle of gin.  After
Pounders was shot, appellant walked over to her and said, AI shot you, huh.  That=s messed up,@ and AWell, y=all shouldn=t=ve made me
mad.@








While proof of the corpus
delicti of an offense may not be made by an extrajudicial confession alone,
proof of the corpus delicti need not be made independent of the
extrajudicial confession.[5]  Layland v. State, 144 S.W.3d 647, 651
(Tex. App._Beaumont 2004, no pet.).  The court
of criminal appeals has held that an extrajudicial confession of an accused is
sufficient to support the conviction as long as it is corroborated.  See Gribble v. State, 808 S.W.2d 65,
70 (Tex. Crim. App. 1990), cert. denied, 501 U.S. 1232 (1991).  Thus, the extrajudicial confession of a
defendant must be corroborated by other evidence tending to show that a crime
was committed.  Id.  Here, there was other evidence presented at
trial to show that appellant shot Pounders. Officers Sabo, Duran, and Ukle testified
that the gunshots had to have come from inside the apartment.  Additionally, Pounders herself testified that
appellant had a gun when he entered the apartment.   

Further, appellant fled the
scene after the shooting.  Appellant=s consciousness of guilt is shown by his flight from the scene.  Martin v. State, 151 S.W.3d 236, 245
n.8 (Tex. App._Texarkana 2004, pet. ref=d); see also Cawley v. State, 166 Tex. Crim. 37, 310 S.W.2d
340, 342 (1957) (AWhen
unexplained, flight has long been deemed indicative of a consciousness of
guilt.  'The wicked flee when no man
pursueth.=  Proverbs 28:1.@), cert. denied, 361 U.S. 920 (1959).  Additionally, the court of criminal appeals
has held that escape, flight, and attempt to escape are always admissible as a
circumstance from which an inference of guilt may be drawn. Thomas v. State,
530 S.W.2d 834, 836 (Tex. Crim. App. 1975). Because appellant fled the scene
after the shooting, the jury could reasonably construe this as consciousness of
guilt.    

We hold that the evidence,
when viewed in the light most favorable to the verdict, supports a
determination beyond a reasonable doubt that appellant intentionally or
knowingly shot Pounders; therefore, we overrule appellant=s first point.  Additionally,
when viewed neutrally, the evidence is not so obviously weak or so greatly
outweighed by contrary proof that it would not support the finding of guilty
beyond a reasonable doubt.  We overrule
appellant=s second
point.  








IV. Conclusion

Having overruled appellant=s two points, we affirm the trial court=s judgment.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
February 23, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]Smith
lived across from Grundy. [4 RR 80]





[3]The
box of ammunition was found above the stove in the kitchen. Additionally, the
box of ammunition was the same kind, .9 millimeter, as the casing that was
found in the living room.





[4]The
written statement was not introduced at trial. 
However, Pounders stated that in the statement she said that appellant
was the person who shot her. 





[5]The corpus
delicti doctrine requires that evidence independent of a defendant's
extrajudicial confession show that the Aessential nature@ of
the charged crime was committed by someone. 
Bible v. State, 162 S.W.3d 234, 246 (Tex. Crim. App. 2005).