IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 539-02






JOSE ZUNIGA, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SEVENTH COURT OF APPEALS


LYNN COUNTY






 Meyers, J., delivered the opinion of the Court, in which Price, Johnson,
Keasler, Hervey, Holcomb, and Cochran, JJ., joined. Keller, P.J., concurred. 
Womack, J., dissented.


O P I N I O N 



 Appellant Jose Zuniga was charged in two counts with intoxication manslaughter
and manslaughter. The jury acquitted him of intoxication manslaughter but found him
guilty of manslaughter. He was sentenced to 20 years imprisonment and a $10,000 fine. 
The Court of Appeals reversed the conviction for factual insufficiency of the evidence
and remanded the case for a new trial. Zuniga v. State, No. 07-00-0461-CR, 2001 Tex.
App. LEXIS 7742 (Tex. App.--Amarillo November 19, 2001, pet. granted) (not
designated for publication). We granted review to determine whether the Court of
Appeals' review of the factual sufficiency of the evidence conflicts with decisions of this
Court and the United States Supreme Court.

FACTS


 Appellant was a driver for a trucking company. While driving a semi-tractor from
Lubbock to Sweetwater to pick up a trailer, appellant attempted to pass a pickup truck on
a two-lane road. Due to a long "S" curve, the section was marked as a no-passing zone
and the posted speed limit was 60 miles per hour. While traveling approximately 70
miles per hour in the left lane to pass the pickup truck, appellant saw an oncoming vehicle
and applied his brakes. The air brakes on the semi-tractor locked, and appellant's vehicle
skidded sideways across the pavement for over 200 feet before the tractor went into a
ditch. The driver of the oncoming vehicle, Alfredo Cantu, also veered into the ditch in an
effort to avoid the skidding semi-tractor. The Cantus' vehicle and appellant's semi-tractor collided in the ditch, killing Alfredo Cantu. Mr. Cantu's wife and his two
granddaughters survived the collision. The driver of the pickup truck witnessed the
wreck and stopped to render aid to the Cantu family. 

 Although appellant denied that he had been drinking, investigating officers noticed
the odor of an alcoholic beverage on appellant's breath and administered a preliminary
breath test and the horizontal gaze nystagmus test (HGN). The breath test indicated that
appellant had consumed an alcoholic beverage but the HGN did not produce enough clues
to provide probable cause to arrest appellant for driving while intoxicated. No other field
sobriety tests were administered at the scene. Officers testified that appellant was
cooperative and that he was not staggering, he did not have difficulty standing or walking,
and his speech was not slurred. Appellant waived his rights and voluntarily gave a blood
sample, which indicated a blood-alcohol content of .03. Due to the amount of time that
had elapsed between the accident and the blood test, investigators testified that
appellant's estimated blood-alcohol content at the time of the collision was .06. When the
accident occurred in May of 1998, the per se definition of intoxication was .10 blood-
alcohol content. However, under the transportation code, it is a violation for a driver of a
commercial vehicle to have any detectable amount of alcohol in his system. Officers
testified that the collision was caused by appellant's failure to obey the speed limit,
passing in a no-passing zone and operating a commercial vehicle with a detectable
amount of alcohol in his system. Although appellant did not appear to be intoxicated and
did not have a blood-alcohol level that would meet the per se definition of intoxication,
officers stated that, due to the measurable amount of alcohol in his system, appellant's
judgment was impaired, as indicated by his decisions to exceed the speed limit and to pass
in a no-passing zone.

 The jury was given instructions about both intoxication manslaughter and
manslaughter. The charge first described intoxication manslaughter, including definitions
of intoxication and recklessness. Next, the jury charge for manslaughter listed three
separate means of commission: passing in a no-passing zone, speeding, and operating a
commercial vehicle with a measurable or detectable amount of alcohol in his system. 
Each was listed in a separate paragraph marked "A.", "B.", and "C.", respectively. The
heading for operating a commercial vehicle while having a measurable amount of alcohol
in his system read, "C. COUNT ONE, PARAGRAPH THREE OF THE INDICTMENT." 
The charge stated: 

 If you find from the evidence beyond a reasonable doubt that the conduct
attributed to the defendant as charged in paragraphs A, B, and C above, either
singularly or collectively, were reckless, as that term has been herein described,
and that such conduct, either singularly or collectively, did thereby recklessly
cause the death of the said Alfredo Cantu, then you will find the defendant guilty
as charged under count one of the indictment. If you do not so find from the
evidence, beyond a reasonable doubt, or if you have a reasonable doubt thereof,
you will acquit the defendant of manslaughter.


The jury returned the verdict form finding appellant not guilty of intoxication
manslaughter and guilty of manslaughter. Handwritten on the verdict form for the
manslaughter charge was the notation "Count one, par. C." The judge read the form of
verdict aloud in court, stating: "Form of Verdict - Manslaughter. 'We, the jury, find the
Defendant guilty of the offense of manslaughter, as charged in the indictment in Cause
No. 98-2419. Count 1, Paragraph "C,"' signed Marian Wood, foreman." The judge then
asked the parties whether they would like for the jury to be polled and both sides
declined.

 On appeal, appellant argued that the evidence was factually insufficient to support
the verdict that he recklessly caused the death by operating a commercial vehicle while
having a measurable and detectable amount of alcohol in his system. The Court of
Appeals cited Robbins v. State, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986), holding
that under Texas Penal Code section 6.04(a), an accused cannot be convicted unless the
death of the victim would not have occurred but for the actions of the accused. The Court
of Appeals reasoned that the jury's manslaughter verdict indicated that it found that
speeding and passing in a no-passing zone were not causes of the accident. Therefore, it
disregarded evidence of speeding and passing in a no-passing zone, and, because
appellant's conduct was not per se reckless, it held that the proof that the accident would
not have occurred but for appellant having a measurable and detectable amount of alcohol
in his system was so weak as to undermine confidence in the determination of guilt. 
Zuniga, 2001 Tex. App. LEXIS 7742. The Court of Appeals also stated that appellant's
factual insufficiency argument was supported by the jury's verdict of not guilty of
intoxication manslaughter. The court reasoned that the jury's acquittal for intoxication
manslaughter indicated that the evidence was not sufficient to establish either that: a)
appellant's mental and physical faculties were impaired, or b) that the impairment was the
cause of the accident. And, if the jury found that intoxication was not the cause of the
accident, then logically, they could not have found that having a measurable or detectable
amount of alcohol in his system caused the accident. The Court of Appeals reversed the
judgment of the trial court and remanded the cause for a new trial. (1)

 The State argues that the Court of Appeals did not conduct a neutral review of the
evidence; rather it ignored evidence supporting the jury's verdict and advanced its own
hypothesis. This, according to the State, is in direct conflict with this Court's holding in
Cain v. State, 958 S.W.2d 404 (Tex. Crim. App. 1997), where we stated that courts of
appeals should examine all evidence impartially and give deference to the jury's verdict. 
The State also contends that the Court of Appeals ignored our holding in Goodman v.
State, 66 S.W.3d 283 (Tex. Crim. App. 2001), by substituting its own theory as to the
cause of the wreck. In Goodman, we stated that "it is a jury, not a reviewing court, that
accepts or rejects reasonably equal competing theories of causation." Id. at 287.

 In its second ground for review, the State contends that the Court of Appeals
should not have used any purported inconsistency in the jury's verdicts as support for its
holding that the evidence of appellant's guilt was factually insufficient. The Court of
Appeals stated that the jury's verdict of not guilty of intoxication manslaughter indicated
that the evidence was insufficient to support a finding of recklessness or causation. The
State contends that such speculation about the reasons for the jury's verdicts conflicts
with the United States Supreme Court's holding in Dunn v. United States, 284 U.S. 390,
393 (1932), stating that consistency in the verdict is not necessary and that courts of
appeals should not speculate about the reasons for the jury's verdict. The State also cites
United States v. Powell, 469 U.S. 57 (1984), upholding the Dunn rule and refusing to
overturn the jury's inconsistent verdicts.

 Appellant responds that the Court of Appeals conducted a proper review of the
relevant evidence and determined that the State's evidence--that the measurable alcohol
in appellant's system caused the collision--was so weak as to undermine confidence in the
jury's determination of guilt. Appellant argues that the trial court's acceptance of the
jury's verdict of guilty of manslaughter by having a measurable amount of alcohol in his
system was effectively an acquittal of the speeding and passing in a no-passing zone
allegations. Thus, the Court of Appeals properly disregarded evidence of speeding and
passing in a no-passing zone. According to appellant, having a measurable amount of
alcohol in his system was not the cause of the wreck. Under Robbins v. State, "a 'but for'
causal connection must be established between the defendant's conduct and the resulting
harm." 717 S.W.2d at 351. Because there was no evidence that appellant was impaired,
he contends that the fact that he had a measurable amount of alcohol in his system is not
sufficient to establish causation of the collision. Additionally, appellant argues that a
concurrent cause, the locked air brakes, was alone sufficient to cause the collision. 

STANDARD OF REVIEW

 In Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996), we stated that a court
of appeals is "vested with the authority to review fact questions in criminal cases." We
also determined that the Jackson v. Virginia, 443 U.S. 307, 61 L. Ed. 560, 99 S. Ct. 2781
(1979), legal-sufficiency standard of review, where the evidence is viewed in the light
most favorable to the prosecution, was not proper for a factual-sufficiency review. 
Clewis, 922 S.W.2d at 128. Instead, rather than viewing the evidence in the light most
favorable to the prosecution, the courts of appeals provide a neutral review. Deference is
given to the jury verdict, as well as to determinations involving the credibility and
demeanor of witnesses. Cain, 958 S.W.2d at 407. We stated that the verdict will be set
aside only if the evidence supporting the verdict is so weak as to render the verdict clearly
wrong and manifestly unjust. A clearly wrong and manifestly unjust verdict occurs where
the jury's finding "shocks the conscience," or "clearly demonstrates bias."

 Because the jury is the judge of the facts and the appellate court's role is to review
criminal convictions, the appellate court is not allowed to "find" facts or substitute its
judgment for that of the jury. Rather, when a court of appeals determines that evidence is
factually insufficient, its only choice is to reverse the judgment and remand for a new
trial. Clewis, 922 S.W.2d at 135. Our role is to determine whether the court of appeals
applied the correct standard of review, not to re-do the sufficiency analysis. Thus, if the
court of appeals used an incorrect standard, the case is remanded to that court for analysis
under the proper standard. Cain, 958 S.W.2d at 408.

DISCUSSION

 The standard for factual sufficiency review developed in Clewis was derived from
Stone v. State, 823 S.W.2d 375 (Tex. App.-Austin 1992, pet. ref'd, untimely filed), which
stated that "the court views all the evidence without the prism of 'in the light most
favorable to the prosecution.'. . . [and] should set aside the verdict only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust." Id. at
381. This standard was first used in a criminal case in Meraz v. State, 785 S.W.2d 146
(Tex. Crim. App. 1990), which adopted the standard that is used in civil law when the
jury fails to find affirmatively on an issue on which the appealing party had the burden of
proof. In Meraz, the Court reviewed the jury's failure to find the elements of the
defendant's affirmative defense. When the defendant has asserted an affirmative defense
or has the burden of proof on an issue, a reviewing court considers all the evidence and
determines whether the judgment "is so against the great weight and preponderance of the
evidence so as to be manifestly unjust." Id. at 154-55. This is suitable for sufficiency
reviews regarding affirmative defenses because in that situation, the burden of proof on
the defendant is preponderance of the evidence. Stone saw no reason why the civil test
should not be adopted for a factual-sufficiency review of the elements of the criminal
offense as well, but cautioned that the great-weight-and-preponderance review in criminal
cases should not be confused with the preponderance-of-evidence burden of proof. The
Court stated that:

 When the jury gives an answer adverse to a party on an issue on which the party
did not have the burden of proof, the jury finding is properly attacked by a
factually-insufficient-evidence point of error. When the jury gives an answer
adverse to a party on an issue on which the party did have the burden of proof, the
jury finding is properly attacked by an against-the-great-weight-and-preponderance
point of error. Technically, therefore, the criminal defendant would attack the
jury's guilty verdict by means of a factually-insufficient-evidence point of error. . . 
A criminal defendant properly attacks the jury's failure to find the elements of his
affirmative defense by means of an against-the-great-weight-and-preponderance
point of error. Because the criminal defendant's burden of proof on the affirmative
defense is by a preponderance of the evidence, the phrasing of the point of error is
logically consistent with the underlying burden of proof, just as it is in a civil case.
A factually-insufficient-evidence point of error, however, does not import the
preponderance-of-the-evidence burden of proof into a factual-sufficiency review
of a jury's finding against a criminal defendant on an element of the offense. We
must not allow the historical semantics used in civil cases to obscure the proper
nature of factual-sufficiency review. 


Stone, 823 S.W.2d at 380-381. (Citations omitted). As noted above, in a criminal case,
when the State must prove the elements of the offense beyond a reasonable doubt, then
the standard borrowed from civil law is inadequate. Clewis recognized this difference,
and attempted to bolster the standard of review by adding safeguards to ensure that
reviewing courts were deferential to the fact-finder. Clewis, 922 S.W.2d at 136. While
Stone and Clewis acknowledged the heightened burden of proof on the State to prove the
elements of the offense, they did not effectively link the burden of proof at the trial to the
standard of review. These cases failed to consider that evidence supporting guilt can
"outweigh" the contrary proof and still be factually insufficient under a beyond-a-
reasonable-doubt standard. In addition, despite the admonition of Stone, the "outweigh"
and "overwhelming weight of the evidence" and "great weight and preponderance"
language derived from civil law evinces an appellate review where the burden of proof at
trial was preponderance-of-evidence rather than beyond a reasonable doubt. As a result,
the evolution of factual sufficiency review since Clewis has been somewhat confusing. 

 In Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App. 2000), the Court considered the
beyond-a-reasonable-doubt burden of proof and expanded on the great-weight-and-preponderance point of error and factually-insufficient-evidence point of error borrowed
from civil law. The Court considered two possibilities and stated: 

 The complete and correct standard a reviewing court must follow to
conduct a Clewis factual sufficiency review of the elements of a criminal
offense asks whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof. 


Id. at 11. The difficulty is that Johnson still refers to the weight of evidence contrary to
the verdict without specifying that contrary evidence does not have to outweigh evidence
of guilt; it has to be only enough to provide reasonable doubt. Clearly, if contrary
evidence does outweigh evidence supporting the verdict, then the beyond-a-reasonable-
doubt standard has not been met by the State.

 In Goodman v. State, 66 S.W.3d 283, the Court again articulated two ways in
which evidence might be factually insufficient. First, when considered by itself, the
evidence supporting a vital fact is too weak to support the finding. The second is a
balancing scale where there is evidence on both sides, both supporting and contrary to the
verdict. The question for the reviewing court was whether the jury's finding is "against
the great weight and preponderance of the evidence." Id. at 285. If the "reviewing court
can only attribute the verdict to bias, irrationality, or some other peculiarity," then the
jury's verdict is clearly wrong and manifestly unjust. Id. at 286. Goodman also
highlighted that a jury may choose to accept or reject reasonably equal alternative theories
of causation. However, a reviewing court does not have that choice. Id. at 287. The
difficulty with Goodman is that the beyond-a-reasonable-doubt burden of proof is again
ignored and the continued use of "against the great weight and preponderance of the
evidence" suggests the lesser preponderance-of-the-evidence burden of proof.

 Next, the Court considered Zuliani v. State, 97 S.W.3d 589, (Tex. Crim. App.
2003) and held that the courts of appeals should review the evidence in a factual-
sufficiency review of the elements of the offense using both of the Johnson standards. 
Zuliani, 97 S.W.3d at 593-94. The Court stated that "the reviewing court reviews all of
the evidence in a neutral light and asks whether the State's evidence taken alone is too
weak to support the finding and whether the proof of guilt, although adequate if taken
alone, is against the great weight and preponderance of the evidence." Id. citing Johnson,
23 S.W.3d at 11. Once again, the preponderance-of-the-evidence language creeps into a
factual-sufficiency review where the burden of proof at trial was beyond a reasonable
doubt. And, the Court's statement that the reviewing court must use both standards is
confusing. The court does not have to use both standards, however, it may use either
standard even though the State had the burden of proof. The Court remanded the case to
the court of appeals because it had analyzed the evidence using only the great-weight-and
preponderance standard but did not consider whether the evidence was so weak as to be
manifestly unjust. In other words, when reviewing the elements of the offense, even
though the State has the burden of proof, courts of appeals may use both standards to
determine whether the evidence was factually sufficient when contrary evidence exists.

 The Texas Supreme Court recently dealt with the issue of a factual-sufficiency
review when the burden of proof at trial was higher than preponderance of the evidence. 
In In re C.H., the court adopted a factual-sufficiency standard of review for cases in
which the burden of proof is clear and convincing evidence. The court stated: 

 We conclude that the burden of proof at trial necessarily affects appellate review
of the evidence. Under traditional factual sufficiency standards, a court determines
if a finding is so against the great weight and preponderance of the evidence that it
is manifestly unjust, shocks the conscience, or clearly demonstrates bias. But that
standard is inadequate when evidence is more than a preponderance (more likely
than not) but is not clear and convincing. As a matter of logic, a finding that must
be based on clear and convincing evidence cannot be viewed on appeal the same as
one that may be sustained on a mere preponderance.


In re C.H., 89 S.W.3d 17, 25 (Tex. 2002)(citations omitted). We agree with the Supreme
Court that the burden of proof at trial dictates the standard of appellate review.

 We will attempt to resolve some of the confusion created by the standard that has
developed since Clewis by: 1) linking the burden of proof at trial to the standard of review
and 2) avoiding language suggestive of a preponderance-of-the-evidence burden of proof. 
This does not alter the standards elucidated since Clewis, rather it serves only to
synthesize the ideas each decision has provided and to acknowledge the necessity for
appellate courts to consider the burden of proof at trial when reviewing the factual
sufficiency of the evidence. There is only one question to be answered in a factual-sufficiency (2) review: Considering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt? However, there are two
ways in which the evidence may be insufficient. First, when considered by itself,
evidence supporting the verdict may be too weak to support the finding of guilt beyond a
reasonable doubt. Second, there may be both evidence supporting the verdict and
evidence contrary to the verdict. Weighing all the evidence under this balancing scale,
the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard
could not have been met, so the guilty verdict should not stand. This standard
acknowledges that evidence of guilt can "preponderate" in favor of conviction but still be
insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another
way, evidence supporting guilt can "outweigh" the contrary proof and still be factually
insufficient under a beyond-a-reasonable-doubt standard. 

ANALYSIS

 Having determined what the proper standard of review is, we now turn to whether
the Court of Appeals used this standard and whether the review was performed correctly. 
The Court of Appeals considered the evidence supporting the jury's verdict of guilty of
manslaughter. The notation handwritten by the foreperson of the jury on the verdict form
apparently referred to the third paragraph of count one of the indictment, indicating that
the conduct that the jury found had recklessly caused the death was the act of driving or
operating a commercial vehicle while having a measurable or detectable amount of
alcohol in his system. Because the instructions allowed the jury to find that speeding,
passing in a no-passing zone, or operating a commercial vehicle while having a
measurable amount of alcohol in his system, either singularly or collectively, was reckless
conduct that caused the death, the Court of Appeals reasoned that the notation specifying
only the third means of commission indicated that the jury found either that speeding and
passing in a no-passing zone was not reckless conduct or that such conduct did not
recklessly cause the death. 

 In order to obtain a verdict of guilty for the offense of manslaughter, the State is
required to prove the elements of recklessness and cause of death. The evidence
supporting the recklessness and causation was the officer's testimony regarding the cause
of the accident, stating: 

 This accident was caused by Mr. Zuniga's failure to obey the speed law, failure to
obey the no-passing zone law, failure to obey the commercial motor vehicle -
operating a commercial motor vehicle with a detectable amount of alcohol law,
and his reaction time and his judgment, I believe, were impaired due to the alcohol
and this caused the death. Using the truck tractor caused the death of Mr. Zuniga -
correction. Caused the death of Mr. Cantu.


Zuniga, 2001 Tex. App. LEXIS 7742 at *21. According to the officer's testimony,
appellant's failure to obey the speed law and failure to obey the no-passing zone law
indicated that his judgment was impaired. However, due to its interpretation of the jury's
verdict, the court disregarded evidence of speeding and passing in a no-passing zone,
which left little evidence from the officer's testimony that appellant was impaired.

 The Court of Appeals next considered the jury's verdict for the charge of
intoxication manslaughter to determine whether the evidence of impairment was
sufficient to prove recklessness and causation, as required for the charge of 
manslaughter.

 Although the question of recklessness is not an element in a prosecution for
intoxication manslaughter under section 49.08 of the Penal Code, a verdict of
guilty must be based on jury findings of intoxication and causation. By its charge,
the court instructed the jury that the word "intoxicated" meant "not having the
normal use of mental and physical faculties by reason of the introduction of
alcohol into the body." The charge also included the element of causation. By its
answer, the jury found appellant not guilty of intoxication manslaughter. Because
the question of the presence of some alcohol in appellant's blood was undisputed, a
logical analysis of the jury's answer of not guilty to intoxication manslaughter
compels a conclusion that the evidence was not sufficient to establish:

appellant's mental and physical faculties were impaired by alcohol

OR

the impairment, if any, was the cause of the accident.

Either conclusion demonstrates the insufficiency of the evidence to support a
finding of recklessness or causation or possibly both.

Id. at *25. In other words, the Court of Appeals reasoned that the jury found that
speeding was not the cause, passing in a no-passing zone was not the cause, and either
that appellant was not impaired or that impairment was not the cause of the accident. The
court concluded that:

 Because the State does not contend that section 522.101(a) of the Transportation
Code made appellant's conduct per se reckless, considering the statutory, not
ordinary definition of reckless, applying the "but for" test, and disregarding
evidence of passing in a no passing zone and speeding for purposes of this review,
based on a neutral review of all the evidence, we conclude that the proof of
appellant's conviction for manslaughter by driving or operating a commercial
vehicle while having a measurable or detectable amount of alcohol in his system as
alleged in count one, paragraph three in the indictment, is so weak as to undermine
confidence in the fact finder's determination of guilt. 


Id. at *26-27. Thus, the Court of Appeals concluded that the evidence was too weak to
support the finding of guilt beyond a reasonable doubt.

 Although not required, the Court of Appeals also conducted a review of the factual
sufficiency of the evidence under the second standard, considering all the evidence of
appellant's use of alcohol and whether or not his judgment or reaction time were
impaired. The court stated that "the State's evidence of causation was based upon
investigation by the officers who were not eyewitnesses to the accident." Id. at *24. The
court also considered the contrary evidence, including:

 Officer DeLuna and others stated that appellant had no slurred speech, no trouble
standing, no trouble walking and that his eyes were not bloodshot.

 Appellant saw the oncoming car and applied his brakes which made 265 feet of
skid marks before the truck left the highway.

 Appellant's blood alcohol content was below the level fixed by statute required
for intoxication.

 Officers did not find any evidence in the truck of drinking while driving, i.e. no
beer cans, no beer bottles, no liquor bottles, nor other debris in the truck or vicinity.

 Appellant had no difficulty in answering questions.


Id. at *23. While the opinion of the Court of Appeals did not indicate that it determined
that the evidence contrary to the verdict was so strong that the beyond-a-reasonable-doubt
standard could not have been met, it is clear that the court considered the evidence and
that it weighed the supporting evidence against the contrary evidence. Having determined
that the evidence supporting the verdict was too weak to support the finding of guilt
beyond a reasonable doubt, the Court of Appeals reversed the judgment and remanded the
case for a new trial. 

 Where the Court of Appeals erred, however, was in its failure to consider all the
evidence, including the evidence of speeding and passing in a no-passing zone. The
court's interpretation of the jury's notes on the verdict form would equate to a special
verdict, in violation of Texas Code of Criminal Procedure article 37.01 section 1(a),
stating that "The verdict in every criminal action must be general." In Kitchens v. State,
823 S.W.2d 256, 258 (Tex. Crim. App. 1991), we stated, "It is appropriate where the
alternate theories of committing the same offense are submitted to the jury in the
disjunctive for the jury to return a general verdict if the evidence is sufficient to support a
finding under any of the theories submitted." So, the Court of Appeals erred in treating
this like a special verdict and by attempting to interpret the jury's handwritten notes. See
Statler v. United States, 157 U.S. 277, 279, 15 S.Ct. 616, 39 L. Ed. 700 (1895), stating
"The verdict being general and not special, any words attached to the finding. . .are
clearly superfluous and are to be so treated. . .a general finding of 'guilty' will be
interpreted as guilty of all that the indictment well alleges. . . . Surplusage in a verdict
may be rejected. . . ." Despite the jury's handwriting and the trial court's reading and
receipt of the verdict, this is a general verdict of guilty of manslaughter. Therefore, the
Court of Appeals should not have disregarded the evidence of speeding and passing in a
no-passing zone for purposes of the factual sufficiency analysis.

 Our conclusion disposes of both points of error. We therefore remand the cause to
the Court of Appeals for a factual-sufficiency analysis consistent with this opinion.


 Meyers, J.


Delivered: April 21, 2004

Publish



 
1. The State filed a motion for rehearing which was overruled by the Court of Appeals,
stating: "We remain convinced that the State's evidence was too weak, by itself, to support any
inference that appellant failed to maintain a proper lookout, failed to timely apply his brakes, or
committed other acts of unsafe driving which caused the collision." Zuniga v. State, No. 07-00-0461-CR, 2002 Tex. App. LEXIS 751, at *5-6 (Tex. App.--Amarillo January 31, 2002) (not
designated for publication). 
2. The distinction between this and a legal sufficiency standard was previously discussed.