Virgil Raymond STEWART, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 08–04–00272–CR.

Court of Appeals of Texas, El Paso.

Feb. 23, 2006.

Rehearing Overruled March 29, 2006.

---

252

Page E. Janik, Houston, for appellant.

Charles Rosenthal, Dist. Atty., Houston, for state.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from a conviction for the offense of possession of methamphetamine in an amount greater than one gram and less than four grams enhanced by the allegation of two prior felony convictions. Appellant pleaded not guilty to the court and the court assessed punishment at thirty-five years' imprisonment. We reverse Appellant's conviction and remand this cause for a new trial.

## I. SUMMARY OF THE EVIDENCE

Sarah Conley testified that she was Appellant's parole officer. On June 17, 2003, she and Appellant had scheduled a home parole visit at Appellant's home at 301 Graham Street in Baytown, Texas. As she approached the house, she encountered an individual who asked if he could help Conley. When she identified herself as Appellant's parole officer, the individual ran into the house and slammed the door. Seconds later he came out of the house and apologized stating that he had been up all night tattooing people and he was not thinking clearly. They entered the house through the back door, and she observed a hose running out the back door. The house smelled like rotten eggs or leaking natural gas. One of the men present stated that Appellant was not there but he would try to call him. There were two males and a female in the house. Then Conley was taken into the living room. The doors to the rest of the house were closed. She was informed that Appellant could not be reached. Conley asked the man to tell Appellant to call her to reschedule the

visit. Conley became suspicious and upon leaving the residence, she notified the Baytown Police Department of her concerns.

On June 18, 2003, Appellant called Conley and stated that he had a new girlfriend and he was at her house recovering from an illness. He gave Conley the address of the house. Appellant stated that his home had been raided because a girl named Sissy had been making methamphetamine at the house. She advised Appellant to call the Baytown Police Department.

Patrick O' Dell testified that he was the director of the special audit division and was the chief investigator for the Harris County Appraisal District. He stated that his investigation revealed that Appellant was the owner of the home at 301 Graham in Baytown Texas.

Detective Chris Zucha testified that he was a police officer with the police department in Baytown, Texas. He was assigned to the narcotics division. On June 17, 2003, Detective Zucha became involved in an investigation at the residence on Graham Street. He spoke to Sarah Conley and, as a result of that conversation, he and his partner traveled to that location. When they arrived, they encountered a man named James Stutts. He stated that the residence belonged to Appellant. Stutts stated that he, Stutts, had arrived at the house within the last two days. The officers found narcotics paraphernalia on Stutts and he was arrested.

The officers then made contact at the house with a female named Donna Kahn. They also found narcotics paraphernalia on her person and she was arrested. They observed some large garbage cans in plain view by the back door of the house. They saw beakers, syringes, empty antihistamine packages, and empty fuel supplement containers. The officers suspected that the location was being used as a methamphetamine lab. They obtained a search warrant and upon entering the residence, they found anhydrous ammonia containers, directions on how to produce methamphetamine, and illicit narcotics. The search area consisted of a main residence, a converted garage residence, and a car. Paraphernalia was found in all three locations. Appellant was never encountered at the residence.

Other officers who assisted in the search testified that three envelopes addressed to Appellant were found in the mailbox, and chemicals used to manufacture methamphetamine were found in a locker in the detached garage residence. Further, there was evidence that an anhydrous ammonia container was found in the kitchen.

Officer Jimmy Pemelton, a sergeant with the Texas Department of Public Safety Narcotics Service, testified that he worked specifically on cases involving methamphetamine and methamphetamine laboratories. He was called out to the 301 Graham location to aid in the investigation. When he inspected the house it looked like a typical methamphetamine lab. The house was unclean with a strong chemical smell. The search revealed connection tubing, coffee filters, containers of ammonia, coke bottles filled with different layers of strange colored liquids, solvents, and camping fuel. Taken together, these items were indicative of methamphetamine production. These items were spread out between all of three search areas. Male clothing was found in the living areas, and the witnesses believed that people were living in both residences.

Steve Dorris, a detective with the Harris County Organized Crime Unit, testified that he helped in the investigation at Appellant's house. He and another officer encountered an individual named James Stutts at the house. They found a syringe on his person and he was placed under

arrest. They then went to the back door of the residence where they made contact with a woman named Donna Kahn. She stated that the house belonged to Appellant and she had been staying there for a few days. She stated that Appellant had left the day before, and she had not spoken to him since. She responded affirmatively when she was asked if she had been left in care and control of the house. After explaining why they were there, the officers asked for consent to go into the house. Kahn became nervous and stated, "No, because Virgil wouldn't appreciate it."

Detective Dorris observed trash bags by the side of the door containing refuse that was indicative of methamphetamine manufacture. After a search warrant was obtained, they entered the house and Dorris searched what appeared to be a master bedroom in the northwest part of the main residence. The witness searched the closet in the bedroom and found men's clothing. A search of the dresser in the bedroom revealed men's and women's clothing and a letter from the Department of Public Safety addressed to Appellant. The detective found numerous items associated with methamphetamine manufacture in the master bedroom. Furthermore, there was evidence of methamphetamine production in the living area, the master bedroom, and the detached garage apartment.

The parties stipulated that methamphetamine in the amounts of 2.18 grams and 76.13 grams were found in the residence. The lesser amount was found in a first aid kit in a locker which was in a bedroom closet of the garage residence apartment. The larger amount was found in the living room in an ice chest.

Lisa Petty testified on Appellant's behalf. She stated that Appellant was her uncle and she had lived at the house on Graham Street for a period during 2003. She stated that Appellant moved in with a woman named Simone at a location on the other side of Houston. She had seen a man and a woman at the house and she believed Appellant had rented the house to them. She thought Appellant had moved in with the woman in the early part of April.

Kelly Waltmon stated that he was a project manager for Brand Services, a scaffolding company. Appellant had worked for him prior to being hospitalized for cancer. Waltmon was aware that Appellant had moved out of his Baytown house and was living "on the other side of town."

Tony Herrington testified that he worked for Brand Services. Appellant had worked with him at the company for two or three years. Herrington did not believe Appellant lived at the house on Graham Street in mid-June of 2003. He drove by Appellant's house on numerous occasions to visit another employee who lived on the same street and he never saw Appellant or his vehicles at the residence.

Simone Crutcher testified that Appellant had been hospitalized with cancer. She took him home from the hospital and they originally lived in Appellant's house on Graham Street for about a month. They then moved to her house in Sharpstown, Texas. She took Appellant to his house where they gathered some clothes; although, they left some clothes at the house. She had last been at the house at the end of May. She did not notice anything unusual or illegal occurring at the house. She was privy to the rental arrangements with the two renters and she knew that Appellant had told them not to engage in any illegal conduct.

James Lamar Stutts testified that he had been arrested by the Baytown Police Department outside the residence on Graham Street on June 17, 2003. He pleaded guilty to the possession of methamphet-

amine charges arising out of that incident and received deferred adjudication. Eventually, he lost his probationary status and was sentenced to prison. Stutts related that he and Donna Kahn were renting different portions of the entire residence from Appellant. Appellant was living across town with his friend Simone. The witness stated that he had last seen Appellant a month prior to Stutts' arrest at the house. Stutts testified that Appellant had not been involved in the manufacturing of the methamphetamine at the residence.

Appellant testified on his own behalf. He related that he had served time in prison for possession of methamphetamine and he had been addicted to methamphetamine in the past. Appellant stated that he did not know that the methamphetamine had been manufactured at his house. He testified that he was last in the house in the middle of May. He rented the house to Stutts and Donna Kahn. Appellant explained that he had been groggy due to his medication, thereby missing the appointment with his parole officer at his house. He stated that he called his parole officer on the 18th of June because his brother called him and told him that police had been at the house on the 17th. Appellant testified that he had warned Stutts and Kahn not to cause trouble because he was continuing to use his house as his parole address.

## II. DISCUSSION

In Issue Nos. One, Two, Five, and Six, Appellant asserts that the evidence is both legally and factually insufficient to support the conviction. Specifically, Appellant maintains that the State did not possess enough evidence to affirmatively link him to the drugs found in the residence, and the evidence did not sufficiently establish that he had knowledge of the fact that there were drugs in his home.

In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989); *Humason v. State*, 728 S.W.2d 363, 366 (Tex.Crim.App.1987). More particularly, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex.Crim.App. 1997).

Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Dwyer v. State*, 836 S.W.2d 700, 702 (Tex.App.-El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence or evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury trial are given great deference. *Menchaca v. State*, 901 S.W.2d 640, 650–52 (Tex.App.-El Paso 1995, pet. ref'd); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim.App.1991); *Leyva v. State*, 840 S.W.2d 757, 759 (Tex.App.-El Paso 1992, pet. ref'd); *Bennett v. State*, 831 S.W.2d 20, 22 (Tex.App.-El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421–22. In so doing, we resolve any inconsistencies in the evidence

in favor of the verdict. *Matson,* 819 S.W.2d at 843 (quoting *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988)). The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony. *Belton v. State,* 900 S.W.2d 886, 897 (Tex.App.-El Paso 1995, pet. ref'd).

When conducting a review of the factual sufficiency of the evidence, we consider all of the evidence, but we do not view it in the light most favorable to the verdict. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Levario v. State,* 964 S.W.2d 290, 295 (Tex.App.-El Paso 1997, no pet.). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996), *cert. denied,* 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). A defendant challenging the factual sufficiency of the evidence may allege that the evidence is so weak as to be clearly wrong and manifestly unjust, or in a case where the defendant has offered contrary evidence, he may argue that the finding of guilt is against the great weight and preponderance of the evidence. *See Johnson,* 23 S.W.3d at 11. Although we are authorized to set aside the fact finder's determination under either of these two circumstances, our review must employ appropriate deference and should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any evidence presented at trial. *See Johnson,* 23 S.W.3d at 7. We are not free to reweigh the evidence and set aside a verdict merely because we feel that a different result is more reasonable. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997); *Clewis,* 922 S.W.2d at 135.

Also in conducting a factual sufficiency review, we view the evidence in a neutral light to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. We set aside the fact finder's verdict only if (1) the evidence supporting the verdict, when considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004). In the second instance, evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can "outweigh" the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard. *Id.* at 485. However, our factual sufficiency review must be appropriately deferential so as to avoid substituting our judgment for that of the fact finder. *Clewis,* 922 S.W.2d at 133. Accordingly, we are authorized to set aside the jury's finding of fact only in instances where it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Id.* at 135. If the evidence is factually insufficient, we remand to the trial court for a new trial. *Id.* at 133–35.

A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses it. Tex. Health & Safety Code Ann. § 481.115(a) (Vernon 2003). The State must prove the accused exercised actual care, custody, control, and management over the contraband and that he knew the substance he possessed was contraband. *Brown v. State,* 911 S.W.2d 744, 747 (Tex.

Crim.App.1995). These elements may be established by circumstantial evidence. *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985). When the accused is not in exclusive possession or control of the place where the contraband is found, the State must prove independent facts and circumstances affirmatively linking him to the contraband—the evidence must establish the accused's connection with the contraband was more than just fortuitous. *Brown,* 911 S.W.2d at 747. An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *Id.*

The number of factors linking an accused to the contraband is not as important as their logical force in establishing the elements of the offense. *See Jenkins v. State,* 76 S.W.3d 709, 713 (Tex. App.-Corpus Christi 2002, pet. ref'd); *see also Jones v. State,* 963 S.W.2d 826, 830 (Tex.App.-Texarkana 1998, pet. ref'd); *Gilbert v. State,* 874 S.W.2d 290, 298 (Tex. App.-Houston [1st. Dist.] 1994, pet. ref'd). The baseline is that proof amounting to a strong suspicion or even a probability of guilt will not suffice. *See Hall v. State,* 86 S.W.3d 235, 240 (Tex.App.-Austin 2002, pet. ref'd). There must be an affirmative link between an accused and the drugs to the degree that a reasonable inference may arise that Appellant knew that the drugs existed and where they were kept. *See Gutierrez v. State,* 628 S.W.2d 57, 60 (Tex.Crim.App.1982), *overruled on other grounds, Chambers v. State,* 711 S.W.2d 240, 247 (Tex.Crim.App.1986). Ultimately, the question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case-by-case basis. *Whitworth v. State,* 808 S.W.2d 566, 569 (Tex.App.-Austin 1991, pet. ref'd).

The State maintains that it demonstrated that Appellant still retained control over the house because when the officers questioned the individuals at the house, they were told that Appellant was not there. Further, it was stated that Appellant would not appreciate them searching the house.

The State argues that Appellant displayed a consciousness of guilt by his actions immediately after the search of the house. The day after the search, Appellant called his parole officer and told her that he had moved out of his house and he had learned that the people in this house had been producing methamphetamine. The State reasons that there was no evidence how Appellant knew that had occurred. Therefore, he must have known of the drug production from his own knowledge.

Next, the State suggests that the fact that items belonging to Appellant were found throughout the home connected him to the drugs. The State points to the fact that mail addressed to Appellant was found at the house. Further, male and female clothes were found in the house, thereby linking Appellant to the drugs.

The State maintains that the drugs were concealed and drug production paraphernalia was found throughout the house accompanied with a strong odor which made it impossible to have entered any room in the house without knowing of the drug production.

Finally, the record revealed that Appellant had a prior history with narcotics, and in particular, methamphetamine.

Regarding the sufficiency of the evidence, and in viewing the evidence in the light most favorable to the verdict, we find that the evidence is legally sufficient to support the conviction. There was evidence from one officer that Donna Kahn had stated that Appellant had left the residence the day before and that he would

**258**

not appreciate the search of his house. Given the odor, disarray, and extensive indications of drug production throughout the house, one could surmise that the conditions were existent the day before the police search. That coupled with the State's other contentions causes us to find that the evidence is legally sufficient.

█ We reach a different result regarding the factual sufficiency of the evidence. This same evidence, viewed neutrally, without favoring either side, provides far too tenuous a connection to "affirmatively link" Appellant to the methamphetamine and so is too meager to support a finding beyond a reasonable doubt that Appellant knowingly or intentionally possessed marihuana.

Appellant was never placed at the house when it was in the condition observed by the police officers. The situation with the parole officer could be viewed in the light that Appellant did not know of the drug activity at the house because he did not try to prevent her discovery of it during her scheduled home visit. Numerous witnesses stated that Appellant did not live in the house and he had moved across town. The existence of mail and clothes at the house is not compelling given the fact that Appellant actually owns the house. We find that the evidence is factually insufficient to affirmatively link Appellant to the methamphetamine. We overrule Issue Nos. One and Five, but sustain Issue Nos. Two and Six.

█ In Issue No. Three, Appellant maintains the evidence is legally insufficient to support his conviction under the law of parties. Where the evidence is sufficient to establish guilt as a principal, the reviewing court need not examine whether the evidence is sufficient to establish Appellant's guilt as a party. *See Black v. State,* 723 S.W.2d 674 (Tex.Crim. App.1986). Issue No. Three is overruled.

In Issue No. Seven, Appellant argues that the evidence is legally insufficient to support the conviction because the State failed to prove that he possessed the drugs long enough to terminate his control over them. Given the prior discussion where we found that Appellant intentionally and knowingly possessed the contraband, we overrule Issue No. Seven.

Having sustained Appellant's Issue Nos. Two and Six, we do not reach the remaining Issue Nos. Four and Eight. We reverse Appellant's conviction and remand this cause for a new trial.