COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS


 

VIRGIL RAYMOND STEWART JR.,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-04-00272-CR



Appeal from the


184th District Court


of Harris County, Texas


(TC#987643)



O P I N I O N


 This is an appeal from a conviction for the offense of possession of methamphetamine in an
amount greater than one gram and less than four grams, enhanced by the allegation of two prior
felony convictions. Appellant pleaded not guilty to the court, and the court assessed punishment at
thirty-five years' imprisonment. We affirm Appellant's conviction.

 On February 23, 2006, this Court issued an opinion reversing and remanding the judgment
of the trial court, on the ground that the evidence was factually insufficient to support the conviction. 
See Stewart v. State, 187 S.W.3d 249, 258 (Tex. App.--El Paso), rev'd and remanded, 209 S.W.3d
127 (Tex. Crim. App. 2006). On December 13, 2006, the Court of Criminal Appeals held that, when
this Court issued its opinion in this case, it did so without the benefit of the Court of Criminal
Appeals' recent opinion in Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006). The Court of
Criminal Appeals remanded the case to this Court to consider the effect, if any, of Watson on our
reasoning and analysis. Stewart, 209 S.W.3d at 127-28.

I. SUMMARY OF THE EVIDENCE


 Sarah Conley testified that she was Appellant's parole officer. On June 17, 2003, she and
Appellant had scheduled a home parole visit at Appellant's home at 301 Graham Street in Baytown,
Texas. (1) As Conley approached the house, she encountered an individual who asked whether he
could help her. When Conley identified herself as Appellant's parole officer, the individual ran into
the house and slammed the door. Seconds later, he came out of the house and apologized, stating
that he had been up all night tattooing people and was not thinking clearly. They entered the house
through the back door, and she observed a hose running out the back door. The house smelled like
rotten eggs or leaking natural gas. One of the men present stated that Appellant was not there, but
he would try to call him. 

 There were two males and a female in the house. Conley was taken into the living room. 
The doors to the rest of the house were closed. She was informed that Appellant could not be
reached. Conley asked the man to tell Appellant to call her to reschedule the visit. Conley became
suspicious and, upon leaving the residence, she notified the Baytown Police Department of her
concerns. 

 On June 18, 2003, Appellant called Conley and stated that he had a new girlfriend and he was
at her house, recovering from an illness. He gave Conley the address of the house, which was in the
Sharpstown area, in southwest Houston. Appellant stated that his home had been raided, because
a girl named Sissy had been making methamphetamine at the house. Conley advised Appellant to
call the Baytown Police Department.

 Patrick O' Dell testified that he was the director of the special audit division and was the
chief investigator for the Harris County Appraisal District. He stated that his investigation revealed
that Appellant was the owner of the home at 301 Graham in Baytown, Texas.

 Detective Chris Zucha testified that he was a police officer with the Baytown Police
Department, assigned to the narcotics division. On June 17, 2003, Detective Zucha became involved
in an investigation at the residence on Graham Street. He spoke to Conley and, as a result of that
conversation, he and his partner traveled to the location. When they arrived, they encountered a man
named James Stutts. Stutts stated that the residence belonged to Appellant and that he himself had
arrived at the house within the last two days. The officers found narcotics paraphernalia on Stutts
and arrested him.

 The officers then made contact at the house with a female named Donna Kahn. They also
found narcotics paraphernalia on her person and arrested her. The officers observed some large
garbage cans in plain view by the back door of the house. They saw beakers, syringes, empty
antihistamine packages, and empty fuel supplement containers. The officers suspected that the
location was being used as a methamphetamine lab. They obtained a search warrant and, upon
entering the residence, they found anhydrous ammonia containers, directions on how to produce
methamphetamine, and illicit narcotics. The search area consisted of a main residence, a converted
garage residence, and a car. Paraphernalia were found in all three locations. Appellant was never
encountered at the residence.

 Other officers who assisted in the search testified that three envelopes addressed to Appellant
were found in the mailbox, and chemicals used to manufacture methamphetamine were found in a
locker in the detached garage residence. Further, there was evidence that an anhydrous ammonia
container was found in the kitchen.

 Officer Jimmy Pemelton, a sergeant with the Texas Department of Public Safety Narcotics
Service, testified that he worked specifically on cases involving methamphetamine and
methamphetamine laboratories. He was called out to the 301 Graham location to aid in the
investigation. When he inspected the house, it looked like a typical methamphetamine lab. The
house was unclean, with a strong chemical smell. The search revealed connection tubing, coffee
filters, containers of ammonia, coke bottles filled with different layers of strange-colored liquids,
solvents, and camping fuel. Taken together, these items were indicative of methamphetamine
production. These items were spread out among all three of the search areas. Male clothing was
found in the living areas, and the witnesses believed that people were living in both residences.

 Steve Dorris, a detective with the Harris County Organized Crime Unit, testified that he
helped in the investigation at Appellant's house. He and another officer encountered Stutts at the
house. They found a syringe on his person, and he was placed under arrest. They then went to the
back door of the residence, where they encountered Kahn. She stated that the house belonged to
Appellant and that she had been staying there for a few days. Kahn stated that Appellant had left the
day before, and she had not spoken to him since. She responded affirmatively when asked whether
she had been left in care and control of the house. After explaining why they were there, the officers
asked for consent to go into the house. Kahn became nervous and stated, "No, because Virgil
wouldn't appreciate it."

 By the side of the back door, Detective Dorris observed trash bags containing refuse that was
indicative of methamphetamine manufacture. After a search warrant was obtained, they entered the
house and Dorris searched what appeared to be a master bedroom in the northwest part of the main
residence. He searched the closet in the bedroom and found men's clothing. A search of the dresser
in the bedroom revealed men's and women's clothing, and a letter from the Department of Public
Safety addressed to Appellant. The detective found numerous items associated with
methamphetamine manufacture in the master bedroom. Furthermore, there was evidence of
methamphetamine production in the living area, the master bedroom, and the detached garage
apartment.

 The parties stipulated that methamphetamine in the amounts of 2.18 grams and 76.13 grams
was found in the residence. The lesser amount was found in a first aid kit in a locker, which was in
a bedroom closet of the garage residence apartment. The larger amount was found in the living room
in an ice chest.

 Lisa Petty testified on Appellant's behalf. She stated that Appellant was her uncle, and she
had lived at the house on Graham Street for a period during 2003. She stated that Appellant moved
in with a woman named Simone at a location on the other side of Houston. She had seen a man and
a woman at the house, and she believed that Appellant had rented the house to them. She thought
that Appellant had moved in with Simone in the early part of April.

 Kelly Waltmon stated that he was a project manager for Brand Services, a scaffolding
company. Appellant had worked for him prior to being hospitalized for cancer. Waltmon was aware
that Appellant had moved out of his Baytown house and was living "on the other side of town."

 Tony Herrington testified that he also worked for Brand Services. Appellant had worked
with him at the company for two or three years. Herrington did not believe Appellant lived at the
house on Graham Street in mid-June of 2003. He drove by Appellant's house on numerous
occasions to visit another employee who lived on the same street, and he never saw Appellant or his
vehicles at the residence.

 Simone Crutcher testified that Appellant had been hospitalized with cancer. She took him
home from the hospital, and they originally lived in Appellant's house on Graham Street for about
a month. They then moved to her house in the Sharpstown area of Houston. She took Appellant to
his house where they gathered some clothes, although they left some other clothes at the house. She
had last been at the house at the end of May. She did not notice anything unusual or illegal occurring
at the house at that time. She was privy to the rental arrangements with the two renters, and she
knew that Appellant had told them not to engage in any illegal conduct.

 James Lamar Stutts testified that he had been arrested by the Baytown Police Department
outside the residence on Graham Street on June 17, 2003. He pleaded guilty to the possession of
methamphetamine charges arising out of that incident and received deferred adjudication. 
Eventually, he lost his probationary status and was sentenced to prison. Stutts related that he and
Donna Kahn were renting different portions of the entire residence from Appellant. Appellant was
living across town with his friend Simone. The witness stated that he had last seen Appellant a
month prior to Stutts's arrest at the house. Stutts testified that Appellant had not been involved in
the manufacturing of the methamphetamine at the residence.

 Appellant testified on his own behalf. He related that he had served time in prison for
possession of methamphetamine and that he had been addicted to methamphetamine in the past.
Appellant stated that he did not know that the methamphetamine had been manufactured at his
house. He testified that he was last in the house in the middle of May. He rented the house to Stutts
and Donna Kahn. Appellant explained that he had been groggy, due to his medication, thereby
missing the appointment with his parole officer at his house. He stated that he called his parole
officer on the 18th of June, because his brother called him and told him that police had been at the
house on the 17th. Appellant testified that he had warned Stutts and Kahn not to cause trouble,
because he was continuing to use his house as his parole address.

II. DISCUSSION


 In our previous opinion, we overruled each of Appellant's legal-insufficiency issues. 
Nothing in the Court of Criminal Appeals' opinion called into question that portion of our opinion,
nor do we discern any reason to reconsider that holding. (2) Watson (the sole basis for the Court of
Criminal Appeals' remand) dealt only with factual-insufficiency issues, so we will limit our review
to Appellant's factual-insufficiency issues, which are Issues Two, Four, Six, and Eight. (3)

 In Issues Two and Six, Appellant asserts that the evidence was factually insufficient to
support the conviction. Specifically, Appellant maintains that the State did not possess enough
evidence affirmatively to link him to the drugs found in the residence, and the evidence did not
sufficiently establish that he had knowledge of the fact that there were drugs in his home.

 When conducting a review of the factual sufficiency of the evidence, we consider all of the
evidence, but (unlike our review of legal sufficiency issues) we do not view it in the light most
favorable to the verdict. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Levario v.
State, 964 S.W.2d 290, 295 (Tex. App.--El Paso 1997, no pet.). We review the evidence weighed
by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the
evidence that tends to disprove that fact. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000);
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 832, 118 S. Ct.
100 (1997). A defendant who challenges the factual sufficiency of the evidence may allege that the
evidence is so weak as to be clearly wrong and manifestly unjust, or, in a case where the defendant
has offered contrary evidence, he may argue that the finding of guilt is against the great weight and
preponderance of the evidence. See Johnson, 23 S.W.3d at 11. Although we are authorized to set
aside the fact finder's determination under either of these two circumstances, our review must
employ appropriate deference and not intrude upon the fact finder's role as the sole judge of the
weight and credibility given to any evidence presented at trial. See id. at 7. We are not free to
reweigh the evidence and set aside a verdict, merely because we feel that a different result is more
reasonable. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at 135. 
We are authorized to set aside the jury's finding of fact only in instances where it is manifestly
unjust, shocks the conscience, or clearly demonstrates bias. Id. If the evidence is factually
insufficient, we remand to the trial court for a new trial. Id. at 133-35. Also, in conducting a factual-sufficiency review, we view the evidence in a neutral light to determine whether a jury was rationally
justified in finding guilt beyond a reasonable doubt.

 In Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004), the Court of Criminal
Appeals stated that the reviewing court will set aside the fact finder's verdict only if (1) the evidence
supporting the verdict, when considered by itself, is too weak to support the finding of guilt beyond
a reasonable doubt or (2) evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Id. at 484-85. Significantly, Zuniga
held that, in the second instance, evidence of guilt can "preponderate" in favor of conviction, but still
be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way,
evidence supporting guilt can "outweigh" the contrary proof and still be factually insufficient under
a beyond-a-reasonable-doubt standard. Id. at 485.

 In Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006), the Court of Criminal Appeals
repudiated its "preponderate" language, expressly overruled Zuniga, and held:

 We therefore disavow such language in Zuniga and reiterate that it is not
enough that the appellate court harbor a subjective level of reasonable doubt to
overturn a conviction that is founded on legally sufficient evidence. An appellate
court judge cannot conclude that a conviction is "clearly wrong" or "manifestly
unjust" simply because, on the quantum of evidence admitted, he would have voted
to acquit had he been on the jury. Nor can an appellate court judge declare that a
conflict in the evidence justifies a new trial simply because he disagrees with the
jury's resolution of that conflict. We have always held that an appellate court must
first be able to say, with some objective basis in the record, that the great weight and
preponderance of the (albeit legally sufficient) evidence contradicts the jury's verdict
before it is justified in exercising its appellate fact jurisdiction to order a new trial. 
We have never, at least until Zuniga, interpreted the factual review jurisdiction of
criminal appellate courts to include the ability to overturn a jury verdict and remand
for a new trial when the greater weight and preponderance of the evidence actually
favors conviction! To the extent that Zuniga may be read to allow such a reversal,
it was flawed at the outset and has a clear potential to cause far more reversals for
factual insufficiency than was ever contemplated by either Clewis or the many cases
within the last 125 years that have inquired into factual sufficiency. It is therefore,
to that extent, overruled.

 

Id. at 417 (emphases in original) (internal footnote omitted). 

 A person commits the offense of possession of a controlled substance, if he knowingly or
intentionally possesses it. Tex. Health & Safety Code Ann. § 481.115(a). The State must prove
the accused exercised actual care, custody, control, and management over the contraband and that
he knew that the substance he possessed was contraband. Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995). These elements may be established by circumstantial evidence. 
McGoldrick v. State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). When the accused is not in
exclusive possession or control of the place where the contraband is found, the State must prove
independent facts and circumstances affirmatively linking him to the contraband. In other words,
the evidence must establish that the accused's connection with the contraband was more than just
fortuitous. Brown, 911 S.W.2d at 747. An affirmative link generates a reasonable inference that the
accused knew of the contraband's existence and exercised control over it. Id.

 The number of factors linking an accused to the contraband is not as important as their
logical force in establishing the elements of the offense. See Jenkins v. State, 76 S.W.3d 709, 713
(Tex. App.--Corpus Christi 2002, pet. ref'd); see also Jones v. State, 963 S.W.2d 826, 830 (Tex.
App.--Texarkana 1998, pet. ref'd); Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.--Houston [1st
Dist.] 1994, pet. ref'd). The baseline is that proof amounting to a strong suspicion or even a
probability of guilt will not suffice. See Hall v. State, 86 S.W.3d 235, 240 (Tex. App.--Austin 2002,
pet. ref'd). There must be an affirmative link between an accused and the drugs to the degree that
a reasonable inference may arise that Appellant knew that the drugs existed and where they were
kept. See Gutierrez v. State, 628 S.W.2d 57, 60 (Tex. Crim. App. 1982), overruled on other
grounds, Chambers v. State, 711 S.W.2d 240, 247 (Tex. Crim. App. 1986). Ultimately, the question
of whether the evidence is sufficient to affirmatively link the accused to the contraband must be
answered on a case-by-case basis. Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin
1991, pet. ref'd).

 The State maintains that it demonstrated that Appellant still retained control over the house,
because, when the officers questioned the individuals at the house, they were told that Appellant was
not there, that he had left "the day before." Further, Kahn stated that Appellant would not appreciate
their searching the house.

 The State argues that Appellant displayed a consciousness of guilt by his actions immediately
after the search of the house. The day after the search, Appellant called his parole officer and told
her that he had moved out of his house and that he had learned that the people in his house had been
producing methamphetamine. The State reasons that there was no evidence of how Appellant knew
that had occurred; therefore, he must have known of the drug production from his own knowledge.

 Next, the State suggests that the fact that items belonging to Appellant were found throughout
the home connected him to the drugs. The State points to the fact that mail addressed to Appellant
was found at the house. Further, male and female clothes were found in the house, thereby linking
Appellant to the drugs.

 The State maintains that the drugs were concealed and drug production paraphernalia were
found throughout the house, accompanied by a strong odor which made it impossible to have entered
any room in the house without knowing of the drug production.

 Finally, the record revealed that Appellant had a prior history with narcotics, and, in
particular, methamphetamine.

 On the other hand, Appellant argues that Appellant was never seen at the residence at 301
Graham at the time the methamphetamine was being manufactured. Furthermore, no witnesses saw
Appellant exercise care, custody, or control over the exhibits found to contain the controlled
substance. Appellant also asserts that his ownership of the residence was insufficient to establish
his guilt, given that other individuals were also in control of the property. 

 We find that the evidence is factually sufficient to support the fact finder's determination that
Appellant was affirmatively linked to the contraband and that he had the requisite knowledge that
the drugs were in his home. While Appellant presented evidence that he was unaware of the illicit
happenings at his house, the State presented evidence that Appellant had been at the residence the
day before the search, and one of the residents stated that Appellant would not appreciate the police's
searching his residence. Personal articles and letters were found at the house, and evidence of drug
manufacturing was prevalent throughout the house. We find that the evidence contrary to the verdict
is not so strong that the beyond-a-reasonable-doubt standard could not have been met, and we do not
find that the great weight and preponderance of the evidence contradicts the fact finder's
determination of guilt. Accordingly, we overrule Issues Two and Six.

 In Issue Four, Appellant asserts that the evidence is factually insufficient under the law of
parties. Where, as here, the evidence is sufficient to establish one's guilt as a principal, the
reviewing court need not examine whether the evidence is sufficient to establish his guilt as a party. 
See Black v. State, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986). We overrule Issue Four.

 In Issue Eight, Appellant contends that the evidence is factually insufficient to demonstrate
that he was aware of the nature of the substance and his control over the substance for a sufficient
period of time for him to have terminated control over the same. Given the prior discussion where
we found the evidence factually sufficient to demonstrate that Appellant intentionally and knowingly
possessed the contraband, we overrule Issue Eight.

III. CONCLUSION


 We therefore affirm the judgment of the trial court.


 KENNETH R. CARR, Justice

August 31, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)

1. Baytown is located in the southeastern-most part of Harris County.
2. We therefore adhere to our prior holding, in which we overruled each of Appellant's legal-insufficiency
issues, Issues One, Three, Five, and Seven.
3. Because we sustained Appellant's Issues Two and Six, we previously found it unnecessary to reach Issues 
Four and Eight.