TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00087-CR


NO. 03-05-00088-CR






Jerome Anthony Michael Smith



&



Jerome Smith, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NOS. 56036 & 56344, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



In each cause, a jury found appellant Jerome Smith guilty of engaging in organized
criminal activity by committing aggravated robbery as a member of a criminal street gang and
assessed a ninety-nine-year prison term. See Tex. Pen. Code Ann. § 71.02 (West Supp. 2005). In
a single point of error, appellant contends that the evidence is factually insufficient to sustain the
convictions. We will affirm.

On November 7, 2003, Ki Sup Son was robbed at gunpoint by Brandon Reed,
Chimeniem Echendu, and Denzel Davis. Two days later, Said Habsi was robbed at gunpoint by
Reed and Markus Maddox. Reed, Echendu, and Maddox were members of the Gangster Disciples,
a criminal street gang with scores of members in the Killeen area, many of them soldiers stationed
at Fort Hood. According to the evidence, appellant, an army sergeant, was the leader of the Killeen
Gangster Disciples. 

Appellant did not directly participate in either robbery. In fact, he was in Las Vegas,
Nevada, when they were committed. He was convicted on the theory that he was criminally
responsible for the conduct of the actual robbers. See Tex. Pen. Code Ann. § 7.02 (West 2003); and
see Otto v. State, 95 S.W.3d 282, 284-85 (Tex. Crim. App. 2003) (applying law of parties in
prosecution for organized criminal activity). Appellant's challenge to the sufficiency of the evidence
is limited to the parties issue. He urges that the evidence is factually insufficient to support the jury's
determination that he solicited, encouraged, directed, aided, or attempted to aid the actual robbers,
and that he did so with the intent to promote or assist the commission of the robberies. Tex. Pen.
Code Ann. § 7.02(a)(2). 

Evidence will be deemed factually insufficient if the proof supporting the verdict is
too weak to support a finding of guilt beyond a reasonable doubt or if the contrary evidence is
sufficiently strong to preclude a finding of guilt beyond a reasonable doubt. Zuniga v. State, 144
S.W.3d 477, 484-85 (Tex. Crim. App. 2004). In a factual sufficiency review, all the evidence is
considered equally, including the testimony of defense witnesses and the existence of alternative
hypotheses. Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). Due
deference must be accorded the fact-finder's determinations, particularly those concerning the weight
and credibility of the evidence, and the reviewing court may disagree with the result only to prevent
a manifest injustice. Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).


Reed testified that he joined the Gangster Disciples while living in California. Reed
said that he specialized in credit card fraud and identity theft, and he claimed to have netted over two
million dollars for the Disciples from these activities. Reed joined the army and, in January 2003,
was stationed at Fort Hood, where he eventually joined the Disciples chapter led by appellant. Reed
boasted to appellant of his ability to raise large sums of money. Appellant, in turn, urged Reed to
"do what you do" because, according to Reed, appellant wanted to diversify the gang's criminal
activities, which at that time were primarily limited to drug sales.

Reed testified that in the fall of 2003, he began to feel additional pressure to produce
income for the Gangster Disciples. Appellant was going to Las Vegas to meet with other gang
members and wanted money for the trip. In October, appellant summoned Reed and several other
gang members to a Killeen apartment. There, appellant ordered Cassyne Malveaux, Reed's friend
and fellow Gangster, to sit in a chair. He then placed a plastic bag over Malveaux's head and began
to question Reed about how he planned to raise money. Reed said that he told appellant "anything
that came to my mind at the time," hoping to satisfy appellant before his friend suffocated. Another
Gangster Disciple, William Brown, also testified to this incident.

By early November, Reed's fear of appellant was such that he was sleeping in his
truck with a pistol. One night after appellant had left for the Las Vegas meeting, Reed was
awakened and seized by Brown and another Disciple, Milton Everette, and taken to an apartment. 
Both Reed and Brown testified to what happened next. Everette called appellant in Las Vegas. 
Appellant ordered Everette and Brown to burn Reed's tongue with a hot knife for six seconds as a
sanction for having failed to produce the money he had promised. After carrying out this order,
Everette and Brown locked Reed in a closet where appellant said he was to remain for twenty-six
hours, although they released him earlier.

On November 7, a few days after being released from the closet, Reed was again
summoned to a gang meeting. There, he was instructed by senior members "to get with somebody,
anybody that would come with me and go out and make money whatever way possible." Reed
convinced Echendu and Davis to help him and, armed with a pistol and taser obtained from Brown,
they committed the first robbery. They delivered the proceeds, $300, to Brown, who testified that
he wired the money to appellant in Las Vegas. (1) Two days later, again acting on orders from
appellant relayed by senior Gangster Disciples, Reed and Maddox committed the second robbery. 
As before, the proceeds of the robbery, only $100 this time, were given to Brown, who wired the
money to appellant. (2)

Reed began talking to army investigators in January 2004. He was taken into
protective custody after receiving a death threat from appellant.

Neither Reed nor any other Gangster Disciple testified that appellant expressly
ordered the commission of the two robberies. Instead, the testimony was that appellant ordered Reed
to do whatever it took--which was understood to mean criminal activity of any kind--to raise
money for the Gangster Disciples and appellant. The witnesses agreed that no Gangster Disciple in
Killeen would undertake any criminal activity without receiving appellant's authorization.

By challenging only the factual sufficiency of the evidence, appellant effectively
concedes that the evidence is legally sufficient to support the jury's finding that he was a party to the
two armed robberies. See Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd,
untimely filed). That is, appellant concedes that when the evidence is viewed in the light most
favorable to the jury's verdict, it supports a finding beyond a reasonable doubt that he solicited,
encouraged, or directed the commission of the robberies with the intent to promote their commission. 
Contrary to appellant's contention on appeal, we believe that the evidence also supports this finding
even when it is viewed neutrally. Although there is no evidence that appellant explicitly ordered
Reed and his companions to commit the two aggravated robberies, the evidence plainly shows that
appellant intentionally encouraged and directed Reed to commit any criminal act necessary to obtain
the money appellant demanded. Applying the standard of review articulated in Zuniga, we conclude
that it was not manifestly unjust for the jury to find beyond a reasonable doubt that appellant was
criminally responsible for the aggravated robberies committed by Reed and his companions.

The point of error is overruled and the judgments of conviction are affirmed.



 ____________________________________________

 David Puryear, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed: June 15, 2006

Do Not Publish
1. Brown testified that he sent the money by Western Union, but company employees
were unable to find a receipt confirming the cash transfer.
2. This transfer was documented by a Western Union receipt.